Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Macrina M. Sharpe (Wyo. State Bar # 7-5757)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: (307) 778-4200
jspope@hollandhart.com
mmsharpe@hollandhart.com

ATTORNEYS FOR DEFENDANT
ATLAS CARBON, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ADA CARBON SOLUTIONS (RED RIVER), LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>ATLAS CARBON, LLC, a Wyoming Limited Liability Company,<br><br>Defendant. | Civil Action No. 1:22-cv-00161-SWS |

**DEFENDANT ATLAS CARBON, LLC'S RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

ADA Carbon Solutions (Red River), LLC's (ADA) motion is premised on the notion that Atlas Carbon, LLC (Atlas) has "intentionally, completely, and indefinitely suspended its performance" under the Sale Agreement for Product (Agreement). Motion (ECF 5), p. 15. According to ADA, a preliminary injunction is the "only avenue to prevent immediate and irreparable harm to ADA." *Id.*, p. 22. This is the first of many fallacies in ADA's motion. As a preliminary (and dispositive) matter, the harm ADA asserts is purely financial. The idea that ADA is about to suffer immediate and irreparable harm strains credulity. Second, the representation that Atlas has "indefinitely suspended its performance" is simply inaccurate. Upon

receipt of the Motion, through counsel, Atlas communicated its willingness to resume[1] performance under the Agreement's Trial Period terms during this litigation. But that was not sufficient for ADA, because ADA wants more of Atlas than the Agreement's Trial Period terms require. Therein lies the true dispute between the parties that this Court must resolve. In the meantime, however, Atlas's Agreement to perform *under the Agreement's Trial Period terms* resolves the current issue before the Court and renders a preliminary injunction inappropriate.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy[.]" *Munaf v. Geren*, 553 U.S. 674, 689 (2008); *see also Winter v. Natural Res. Def. Council,* 555 U.S. 7, 24 (2008). It is never awarded as a matter of right. *Id.* To obtain a preliminary injunction, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the threatened harm outweighs the harm that the preliminary injunction may cause the opposing party; and (4) an injunction is in the public interest. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id*. at 1281. If the movant fails to prove even one of the four factors, the motion must be denied. *See Winter*, 555 U.S. at 23–24.

---

[1] Atlas's reference to "resuming" performance is not an admission of any breach of the Agreement. Instead, there is a dispute over what performance is required of Atlas during the Agreement's Trial Period. Under Atlas's interpretation of the Agreement, and discussed below, its temporary suspension of delivery is not a violation of any term applicable to the Trial Period. As such, Atlas's agreement to "resume" deliveries is a good faith concession aimed at avoiding the cost of additional motions practice, not a contractual obligation.

# ARGUMENT

**I.      Atlas Agreed to Perform Pursuant to the Terms of the Agreement's Trial Period.**

ADA filed its Verified Complaint and Motion for Preliminary Injunction on July 25, 2022. (ECF 1 and 5). Atlas disputes numerous allegations in the filings and disagrees that ADA is entitled to the relief it seeks. Nevertheless, to avoid the cost of additional motions practice, on August 8, 2022, through counsel, Atlas communicated to ADA its willingness to continue delivering product to ADA pursuant to the Agreement's Trial Period terms during the pendency of this litigation. Exhibit A, Declaration of Reza Hashampour at 7. There is no dispute that the parties are still within the Trial Period of the Agreement. Motion (ECF 5), p. 5. As such, the reality is that ADA is entitled to no more. Atlas resuming performance necessarily eliminates any potential imminent harm to ADA and renders a preliminary injunction unwarranted. After all, ADA's request is simply that the Court "require Atlas to resume its performance[.]" *Id.*, p. 24. Consequently, ADA has already been awarded the relief it seeks, and its Motion is moot.

**II.     ADA Cannot Show Irreparable Harm**

The fact that Atlas has agreed to perform pending litigation should end the Court's inquiry. But even if it did not, a preliminary injunction would not be warranted under these circumstances. Irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction[.]" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). If a movant cannot make a showing of irreparable harm, the court need not consider the other requirements for the issuance of an injunction. *See id.*

For harm to be irreparable, it must be "harm that cannot be compensated after the fact by money damages." *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1210 (10th Cir. 2009). "Purely speculative harm will not suffice[.]" *Id.* Instead, the harm "'must be both certain and great,' and

not 'merely serious or substantial.'" *N.M. Dep't of Game & Fish v. United States DOI*, 854 F.3d 1236, 1250 (10th Cir. 2017) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

This dispute is about money. ADA claims there is a binding contract between the parties that requires Atlas to continue providing product to ADA at a steal. Atlas disagrees and interprets the Agreement differently. If Atlas fails to provide product, ADA claims it will "lose significant revenue and profits[.]" Motion (ECF 5), p. 20. If ADA's theory is correct, that may be true. But ADA goes a step too far in asserting that it will suffer *irreparable* harm absent this Court's immediate intervention because ADA has admitted its losses are monetary or reducible to a monetary number—not irreparable.

Further, activated carbon is not as special as ADA asserts. There are various producers of activated carbon in the industry from whom ADA can secure alternative product. *See* Exhibit 5 to Verified Complaint (showing multiple bidding manufacturers in the area); Exhibit A, Declaration of Reza Hashampour. ADA's suggestion that it cannot source product from a different manufacturer is disingenuous at best. *See id.*, p. 22 (implying this is one of the unique situations where there is "an 'inability to cover'" that might warrant specific performance). ADA can do just that and, if it prevails in this lawsuit, its monetary damages can be calculated like any other buyer's damages in a case of nondelivery or repudiation. *See* Wyo. Stat. § 34.1-2-713. ADA's conclusory and unsupported assertions to the contrary fall far short of demonstrating the "certain and great" imminent harm necessitating extraordinary relief.

Further, unlike the cases ADA cites in its briefing, this case does not involve potential lost customers of an unascertainable number or importance. *See Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990). Nor does it involve damages "so speculative that it would

be difficult if not impossible to correctly arrive at the amount of the damages." *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (citations omitted). There is simply no comparable risk of cascading and intangible losses here. At worst—and unproven—ADA may have "industry shortfalls" that prevent its performance under other existing contracts. Motion (ECF 5), p. 22. But those contracts are identifiable and any associated damages are easily measurable and purely financial. The reality is that ADA is getting product from Atlas at a steal, making profits hand over first, and doesn't want to turn off the spigot. This case is all about money and does not warrant extraordinary preliminary relief.

### III.  ADA Is Not Likely to Prevail on the Merits.

This case is not as simple, nor the Agreement as clear, as ADA represents. Atlas' forthcoming Counterclaims will articulate what ADA's Motion ignores: the fact that ADA knowingly drafted an Agreement that Atlas could not, nor has it even been able, to perform.

### A.  Performance as Contemplated under the Agreement is Impossible.

Wyoming recognizes the various doctrines that discharge performance when a subsequent event has rendered performance impossible or impracticable. *See Mortenson v. Scheer*, 957 P.2d 1302, 1305 (Wyo. 1998); *Downing v. Stiles,* 635 P.2d 808, 811 (Wyo. 1981). Here, the crux of the Agreement is that Atlas agreed "to sell, and ADA agree[d] to purchase" activated carbon that meets specifications set out in the Agreement. *See* Exhibit 1 to Verified Complaint, Sale Agreement for Products, Section 1. The Agreement contemplates two separate phases. November 1, 2021, marked the first day of the "Trial Period." The Agreement dictates that the "Trial Period" will last from November 1, 2021 until May 31, 2022. *Id*. But regardless of the dates contemplated in Section 1, "the **Trial Period will continue, and Contract Year 1 will not begin, until ADA has accepted 2.56 Million lbs. of <u>conforming</u> Products** from Atlas." *Id*.

(emphasis added). Only then, "[u]pon completion of the Trial Period," would the contract "**transition** to a 3-year commercial Agreement[.]" *Id.* (emphasis added).

In other words, Atlas needed to demonstrate to ADA that it could provide over two and half million pounds of *conforming product* to ADA before the "Term of the Agreement" would commence. For that reason, the Agreement explicitly omits the Trial Period from its "Term" which is specifically defined as "three (3) years from **the expiration of the Trial Period**[.]" *Id.* at Section 2 (emphasis added). For the product to be *conforming*, it needs to meet certain specifications outlined in Schedule A to the Agreement. *Id.* at Section 1. Importantly, among the various other mandates in Schedule A, the Product's volatiles could not exceed eight (8) percent of its total weight. *Id.* at Schedule A.

ADA's Motion glosses over the importance of the fact that, since day one, Atlas has never been able to provide ADA with conforming product. *Exhibit A*, Declaration of Reza Hashampour at 8; *Verified Complaint* (ECF 1), at paragraph 49. Atlas even provided samples of its product to ADA so ADA could test the product to see if it met specifications before ADA executed the Agreement. *Id.* at 9. That is the reason there is absolutely no dispute the parties remain within the Trial Period. The reality is that the parties *will never* exit the Trial Period. Atlas does not have, and never will have, the ability to produce conforming product. That is because the feedstock used at Atlas' facility is Wyoming Powder River Basin coal, which has inherent chemical properties. *Id.* at 10. Those properties, which Atlas cannot change or modify, make it impossible for Atlas to produce product with a low enough volatile to meet ADA specifications.[2] *Id.* at 11. Atlas has attempted to work through this problem with ADA; but it cannot meet the volatile number ADA demands. ADA knows this and has always known it. Now

---

[2] Volatile refers to the amount of volatile material in activated carbon.

ADA seeks to use this problem as a stick to force Atlas into delivery and quantity requirements divorced from the terms of the Agreement.

With this reality in mind, it is difficult to imagine the outcome ADA is contemplating.[3] ADA's argument is essentially that Atlas must continue trying to achieve the unachievable. Despite the Agreement's Trial Period demonstrating that the relationship the parties were "trying out" is unfeasible, and the fact that the Agreement's "Term" has yet to (and never will) commence, ADA asks the Court to condemn both parties to an infinite Trial Period. As a legal matter, this means ADA cannot overcome the forthcoming defense of impossibility and impracticability. Likewise, ADA is unlikely to prevail on the merits because Atlas will win its breach of the implied covenant of good faith and fair dealing.

**B.      Atlas does not have specific delivery or timing requirements during the Trial Period.**

While ADA does not discuss what it believes the Trial Period requires because its motion presumes nonperformance, that is truly the crux of the dispute because Atlas will perform. Atlas, however, cannot perform as ADA demands. For example, Atlas can deliver product to ADA in October. ADA, however, wants product next week. From ADA's correspondence in this case, it appears to believe: 1) all the Agreement's terms apply to the Trial Period; and 2) Atlas is

---

[3] ADA's request, as it sits before the Court, is simply for the Court to mandate that Atlas perform. Atlas has since agreed to perform under the Trial Period's terms. That outcome, however, appears unsatisfactory to ADA because it seems the parties disagree about Atlas's performance requirements during the Trial Period. As such, the relief ADA seeks (an Order from the Court mandating performance *and* now presumably also an Order interpreting the Agreement in a favorable manner requiring heightened performance) has morphed since filing its Motion. These changes in the posture of the Motion should necessitate additional briefing by ADA and render the upcoming hearing premature.

required to ship whatever amount ADA orders within whatever time ADA demands. Neither is true. As a result, ADA will not succeed on the merits.

The Agreement applies Wyoming law, which means this Court's goal is "to discern the intention of the parties to the document." *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 6, 185 P.3d 1259, 1261 (Wyo. 2008). In so doing, courts first consider the "specific terms of the contract and give them their plain and ordinary meaning." *Id*. Plain meaning is that "meaning which [the] language would convey to reasonable persons at the time and place of its use." *Moncrief v. Louisiana Land & Exploration Co*., 861 P.2d 516, 524 (Wyo. 1993). Courts presume each provision in a contract has a purpose and avoid interpretations that create inconsistent provisions or render any provision meaningless. *Scherer, II v. Laramie Reg'l Airport Bd*., 2010 WY 105, ¶ 11, 236 P.3d 996, 1003 (Wyo. 2010).

To start, the Agreement fails to effectively define the parties' obligations during the Trial Period. For example, the Agreement has no specific term that defines how much Atlas must ship during the Trial Period. The Agreement does not define when Atlas must ship. The Agreement also does not set out how orders work under the Agreement. The closest the Agreement comes is Section 3. Section 3 states:

> **DELIVERY.** Time is of the essence in the performance of this Agreement. ATLAS will arrange for delivery of Orders, with a minimum Fourteen (14) days prior written notice from ADA. Atlas shall accept Orders within one (1) business day. ADA shall accept a minimum delivery quantity of 40,000 lbs of PRODUCT per delivery. The shipping company shall be responsible for weighing all PRODUCT deliveries and providing the scale receipt to Atlas and ADA. The weight on the scale receipt shall be accepted by both ADA and ATLAS as the quantity of PRODUCT delivered.

(*See* Exhibit 1 to Complaint at 2.) But this section still does not set quantity or delivery requirements.

Instead, it states that Atlas must arrange delivery with at least two weeks lead time. Atlas must accept orders within one business day. And it requires ADA to accept a certain minimum quantity. But it does not say that Atlas must deliver 500,000 tons per week. It does not say that Atlas must ship product in a certain period. And it does not say that Atlas must accept any order no matter what the order says. To read it otherwise would create the absurd result that Atlas would have to ship any volume of product on any timetable ADA demands, i.e., a million tons per day. *Schaffer v. Standard Timber Co.*, 331 P.2d 611, 616 (1958) ("A contract will not be presumed to have imposed an absurd or impossible condition upon one of the parties but will be interpreted as if the parties understood the conditions at the time.") Likewise, to create a requirement for shipping times or quantities would read words into the Agreement, contrary to Wyoming law. *Christensen v. Christensen*, 2008 WY 10, ¶ 13, 176 P.3d 626, 629 (Wyo. 2008) (explaining courts do not rewrite agreements under the guise of interpretation).

Beyond this section, nothing in the Agreement discusses quantity and timelines for delivery during the Trial Period. As such, ADA cannot prove Atlas has breached the Agreement by setting a delivery schedule different than what ADA demands or setting limits on how many tons it has available to ship.

Atlas anticipates ADA may point to sections in the Agreement that discuss required volumes. But those sections illustrate that many terms in the Agreement do not apply to the Trial Period. Section 1 specifically includes requisite "Annual Quantit[ies]" for Contract Years 1, 2, and 3. Exhibit 1 to Verified Complaint, Section 1. That section says nothing about the Trial Period. Section 4, in turn, imposes certain penalties for Atlas's failure to meet such quantities, specifically referring to the "Annual Target Volume." *Id.* at Section 2. Annual Target Volumes are those volumes associated with the Contract Years in the Agreement—not the Trial Period. *Id.*

9

at Section 1. As a result, the Agreement has no penalty for Atlas failing to ship a certain amount of Product during the Trial Period. Read with the rest of the Agreement, the parties intended the Trial Period to be just that—a trial run not bound by other parts of the Agreement.

The bottom line is that nothing in the Agreement imposes any obligation on Atlas to ship a minimum amount of product in any given time frame during the Trial Period. *See id.* at Sections 1, 3, and 4. Rationally, the logic underlying the absence of such requirements is clear: the Trial Period was intended to be just that, *a trial period*. But Atlas never intended, as evidence by the clear absence of any requirement to the contrary, to become slaves to the quantity and delivery demands of ADA. In other words, ADA's view of the Agreement is not consistent with its plain terms and therefore it does not have a likelihood of succeeding on the merits.

**IV.     A Hearing on ADA's Motion is Unnecessary**

Ultimately, Atlas's agreement to perform under the Trial Period terms eliminates any imminent harm to ADA and affords ADA the relief it seeks. That fact alone renders ADA's Motion moot and the currently scheduled August 18, 2022 hearing unnecessary. To avoid unnecessary costs associated with hearing preparation, travel, and in-person attendance, Atlas requests that the Court vacate the current setting. A proposed Order denying ADA's Motion as moot and vacating the August 18, 2022 hearing is submitted herewith.

Further, ADA's motion and briefing assumes a world where Atlas has permanently refused to perform. As discussed above, the opposite is true. As such, ADA's briefing and the premise of its Motion are aimed at a universe that does not exist. Atlas concedes that ADA briefed its motion before receiving notice that the temporary halt to shipments had ended. Still, ADA's briefing can no longer help the Court resolve the issues and does not represent an accurate picture of the facts needed to analyze the elements for a preliminary injunction. For that

reason, in the alternative to vacating the hearing, additional briefing should be ordered and the hearing reset to allow both sides to brief the current state of the dispute.

## CONCLUSION

ADA has already obtained the relief it seeks through Atlas's voluntary compliance pending litigation. Even if that were not the case, ADA is not likely to succeed on the merit of its claims. Further, the harm ADA alleges is compensable by money damages and thus, by definition, not irreparable. As such, ADA has an adequate remedy at law and the injunctive relief it seeks is inappropriate.

DATED: August 15, 2022.

/s/ Macrina M. Sharpe
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Macrina M. Sharpe (Wyo. State Bar # 7-5757)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003
Telephone: (307) 778-4200
jspope@hollandhart.com
mmsharpe@hollandhart.com

ATTORNEYS FOR ATLAS CARBON, LLC

19451243_v3