Maxwell N. Shaffer, Wyo. #7-5189
Leland Shaffer LLP
8694 E. 28th Ave.
Denver, Colorado 80238
Phone:        720.556.1872
Email:         maxwell.shaffer@lelandshaffer.com

*Attorney for Plaintiff-Counterclaim Defendant*
*ADA Carbon Solutions (Red River), LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ADA CARBON SOLUTIONS (RED RIVER), LLC, a Delaware Limited Liability Company, | |
| Plaintiff-Counterclaim Defendant, | Case No. 1:22-cv-00161-SWS |
| v. | |
| ATLAS CARBON, LLC, a Wyoming Limited Liability Company, | |
| Defendant-Counterclaim Plaintiff. | |

**ADA CARBON SOLUTIONS (RED RIVER), LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

ADA Carbon Solutions (Red River), LLC ("Plaintiff" or "ADA") files this Memorandum in Support of Motion for Leave to File Second Amended Complaint under Fed. R. Civ. P. 15(a) and Local Rule 15.1 (Doc. No. 58) (the "Motion").

**INTRODUCTION**

Just over two weeks ago, ADA was finally able to procure the deposition testimony of two employees of Wood PLC ("Wood"), an international engineering firm that is responsible for operating Atlas Carbon, LLC's ("Atlas" and, together with ADA, the "Parties") manufacturing plant in Gillette, Wyoming (the "Plant"). These witnesses, and in particular Jim

Harrington, a process engineer in charge of the technical aspects of the activated carbon manufacturing process at the Plant, demonstrate that at the time Atlas was negotiating the Sales Agreement for Products, dated effective November 1, 2021 (the "Agreement"), Wood, Atlas's contractor,                                                                                                        , for Atlas to satisfying the promises and assurances that Atlas was making, and ultimately made in finalizing the Agreement, regarding its ability to perform.  These circumstances provide sufficient basis to plead and pursue claims for fraud and, further, to seek the remedy of piercing the corporate veil.  Based on the facts of this case, the law, and argument below, the Court should provide ADA leave to file its Second Amended Complaint.

## CASE BACKGROUND AND PROCEDURAL POSTURE

**1.      The dispute underlying the litigation.**

This civil action arises out of a Sales Agreement for Products entered into by and among ADA and Atlas made effective November 1, 2021, (ECF No. 35-1).  Thereunder, ADA agreed to purchase from Atlas, and Atlas agreed to sell to ADA, certain quantities of activated carbon manufactured from Powder River Basin coal ("PRB Coal") feedstock at the Plant.  (*See* Agreement at pp. 1-2.)  Six months after executing the Agreement, however, Atlas initiated efforts to coerce ADA into agreeing to pay more for the subject activated carbon than the Agreement calls for.  Atlas continued its pressure campaign until July 5, 2022, when Reza Hashampour, Atlas's CEO, served ADA with a force majeure notification under the Agreement.  (Doc. 35-2) (the "FM Notice").  With the FM Notice, Atlas suspended its obligation to deliver activated carbon to ADA "for the Trial Period of the contract."  (*Id.*)  The FM Notice contained no statements whatsoever regarding product specifications, volatiles, PRB Coal feed stock, or its chemical makeup.

**2.     The lawsuit.**

ADA filed its Verified Complaint against Atlas on July 25, 2022, stating multiple contract-based claims. ADA also filed a motion for preliminary injunction, seeking an order directing Atlas to resume performance under the Agreement. (Doc. 4) On August 15, 2022, Atlas filed its brief opposing the motion for preliminary injunction. (Doc. 15.) Therein, Atlas impliedly abandoned (but did not expressly revoke) the FM Notice, and set forth new theories of it cased based on impossibility and impracticability. (*Id*. at p. 5.)

Atlas filed its Answer to ADA's Verified Complaint and Counterclaims on August 17, 2022. (Doc. 17.) In support, Atlas alleged that since entering into the Agreement, it had "learned that its inability to meet the specification[s] … mandated by the Agreement" was "due to the chemical properties" of the PRB Coal feedstock used in the manufacturing process at the Plant. (*Id*. at p. 21, ¶ 22.) Atlas therefore stated claims for (1) declaratory relief, and (2) breach of the covenant of good faith and fair dealing. ADA answered the counterclaims on September 12, 2022. (Doc. 22.) As to the allegations regarding Atlas's Wyoming PRB Coal feedstock, and the makeup of the activated carbon that Atlas produces, ADA submitted a declaration from its Chief Technical Officer, Joseph M. Wong, Ph.D. (Doc. 22-1.) Dr. Wong's submission shows that Atlas's allegations regarding chemical makeup are incorrect. (*Id*.)

**A.     Initial scheduling deadlines.**

On October 26, 2022, ADA and Atlas participated in an initial pretrial conference with Magistrate Judge Rankin. Not long after concluding the conference that morning, Magistrate Judge Rankin issued the Court's Initial Pretrial Order, (Doc. 26), and set the deadline to seek leave amend the pleadings or add additional parties as December 23, 2022.

B.  **ADA obtains leave to file its First Amended Complaint.**

Following two short extensions of the deadline to amend the pleadings, (Docs. 29 and 31), on December 29, 2022, ADA filed its motion seeking leave to lodge its First Amended Complaint. (Doc. 33.)  On December 30, 2022, Magistrate Judge Rankin granted the motion, (Doc. 34), and on January 4, 2023, ADA filed its First Amended Complaint ("FAC").  (Doc. 35.)  Although the FAC did not add additional claims or parties, it did incorporate additional factual allegations related to Atlas's yet-to-be explained allegations regarding the chemical makeup of Wyoming PRB Coal feedstock, and its refusal to accept orders for activated carbon that ADA appropriately submitted under the Agreement and following Atlas's August 2022 commitment to perform.

## FACTUAL BASIS JUSTIFYING LEAVE TO AMEND

1.  **Atlas's F.R.C.P. 26(a)(1) disclosures and responses to interrogatories under F.R.C.P. 33.**

On December 19, 2022, Atlas served its Rule 26(a)(1) Initial Disclosures.  (**Exhibit 1**, Atlas Disclosure Statement.)  The document discloses seven individuals under F.R.C.P. 26(a)(1)(A).  (*Id*. at pp. 2-4.)  As to "Atlas's production capabilities generally," and "Atlas's inability to produce product conforming to the specifications outlined in the Agreement[,]" Atlas disclosed only two individuals: Mr. Hashampour and Nicholas Pierson, and executive with Wood.  (*Id*.)

Notably, Atlas did not, and has not, disclosed any individuals as having discoverable knowledge about: (1) what "Atlas has since learned" regarding its alleged "inability to meet the specification for the Product as mandated by the Agreement" and, specifically, the circumstances demonstrating that it "is due to the inherent chemical properties found in the feedstock used at Atlas' facility, Wyoming Powder River Basin coal[,]" (Doc. 17 at p. 21, ¶ 22); (2) the specific "properties" of Wyoming PRB Coal feedstock "which Atlas cannot change or modify," and that "make it impossible for Atlas to produce product with low enough volatile material to meet ADA

4

specifications[,]" (*id.* at p. 22, ¶ 23); or, finally, (3) what "ADA knew" about "the feedstock's chemical properties" and specifically those that "prevented Atlas from ever achieving the necessary volatile content required to meet the product specifications outlined in the Agreement[,]" (*id.*, ¶ 24). Despite these disclosure shortcomings, ADA nonetheless requested the information from Atlas under its First Set of Interrogatories, which ADA served on February 27, 2023, and specifically under Interrogatory Nos. 18 – 20. (**Exhibit 2**, ADA First Written Discovery to Atlas at p. 14.) Atlas served responses and objections to ADA's First Written Discovery on April 17, 2023. (**Exhibit 3**, Atlas Answers to ADA First Written Discovery.) As to Interrogatory Nos. 18 – 20, Atlas refused to provide any substantive responses under objections that these interrogatories "exceed[ed] the limit on interrogatories established by Fed. R. Civ. P. 33(a)." (*Id.* at pp. 19 and 20.)

**2.    Atlas's disclosure of expert witnesses.**

On April 27, 2023, Atlas filed its Designation of Expert Witnesses with the Court. (Doc. 49.) Therein, Atlas disclosed two non-retained experts: (1) Nicholas Pierson; and (2) Jim Harrington. While both Atlas and ADA previously disclosed Mr. Pierson under F.R.C.P. 26(a)(1), Jim Harrington had not been previously disclosed by any party for any purpose.

Through counsel, the Parties initiated discussions on deposition scheduling, including these witnesses from Wood, during May 2023. (**Exhibit 4**, May 2023 email chain re depositions and mediation.) On or about May 16, 2023, counsel for Atlas indicated that he had significant scheduling issues, and proposed an agreement to stay deposition practice until after the June 15, 2023 mediation. Undersigned counsel resisted, indicating that the Parties had a full month to work with prior to mediation, but to no avail. Despite designating two Wood employees as non-retained

5

experts, counsel for Atlas indicated that he did not represent Wood, and could not speak to their availability, which all but eliminated the possibility of pre-mediation depositions.

When mediation was unsuccessful, the Parties revisited deposition scheduling. Once again, this proved to be a very difficult process. (*See* **Exhibit 5**, July 19, 2023 email chain re deposition scheduling.) Counsel was not aware, for instance, that Wood required involvement of outside counsel, separately representing Mr. Pierson and Mr. Harrington, in order to set the depositions. This lead to a delay of nearly a month in obtaining the deposition testimony of both witnesses, which was well beyond both the traditional discovery cut-off, as well as the deadline to seek amendment.

    **A.**    **Pierson.**

With respect to Mr. Pierson, Atlas primarily disclosed him as an operations expert. (Doc. 49 at pp. 1-3, §§ 1.A.-G.; **Exhibit 6**, Tr. of Aug. 1, 2023 Dep. of Nicholas Pierson ("Pierson Dep.") at 25:22-26:1, 72:15-24.) Atlas, however, also attempts to disclose Mr. Pierson to provide opinions on "[t]he inconsistent nature of the feedstock used" in the Plant "and why that creates challenges for repeatability in the product." (Doc. 49 at p.2, § 1.H.) Mr. Pierson readily concedes, however,

(**Ex. 6**, Pierson Dep. at 82:8-85:17.)

    **B.**    **Harrington.**

In contrast, Mr. Harrington was designated to provide opinion testimony regarding the technical aspects of the manufacturing process. (Doc. 49 at p. 3, §§ 2.A.-B.)

During his deposition, Mr. Harrington testified at length regarding

According to Mr.

Harrington,

(**Exhibit 7**, Tr. of July 24, 2023

Dep. of Jim Harrington ("Harrington Dep.") at 61:8-9.)  To put it plainly and directly:

(*Id*. at 61:9-11.)

As far as

(*Id*. at 67:10-14 (emphasis added).)  Later in the deposition, Mr. Harrington drove this point home:

(*Id*. at 108:6-15.) In the end, Mr. Harrington confirmed that

(*Id*. at 108:22-109:3)  Moreover, Mr. Harrington confirmed that

(*Id*. at 118:4-8.)  When asked about his

Mr. Harrington stated:

(*Id*. at 70:11-18.)

As to the issue of feedstock, the PRB Coal feedstock utilized in Atlas's manufacturing process                              (*Id*. at 64:15-22.) In addition to

(*Id*. at 97:2-99:7.)  Mr. Harrington

(*Id*. at 64:23-65:6.)  And critical for the present issue, Mr. Harrington

(*Id*. at 73:8-17.) It is Mr. Harrington's opinion

(*Id*. at 73:18-25.)

Case 1:22-cv-00161-SWS Document 65 Filed 08/10/23 Page 9 of 13

3. **Specifications applicable to activated carbon manufactured under the Agreement.**

Critical both to the pending motion to amend, and this litigation in general, ADA's specification requirements for the contracted-for activated carbon were a significant part of the negotiations process. In light of the stated factual basis for Atlas's counterclaims, it is curious to note that the final as-signed version of the Agreement contained an express warranty, contained in Section 8, binding Atlas to the specifications. Specifically, it provides:

> **WARRANTIES.** ATLAS warrants to ADA that the PRODUCTS will … conform to those specifications contained in Schedule A ….

(Agreement at p. 3.) The express warranty, however, was not a part of the LOI that the Parties agreed to, but, rather, was a term that *Atlas* added when it first circulated an initial working draft of the Agreement. (**Exhibit 8**, Oct. 21, 2021 email from A. Cooper to O. Velasquez (ADA000127-136) (attaching Word and PDF copies of "Atlas ADA sales agreement oct 21 2021.").) Now, with the benefit of Mr. Harrington's testimony, we see that when Atlas offered this warranty, and agreed to it in finalizing and executing the Agreement, Atlas knew that it could not perform according to the terms it was promising.

## ARGUMENT

1. **Applicable legal standards.**

"Two Federal Rules of Civil Procedure, Rules 15 and 16, govern" ADA's "motion to amend." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015). Specifically, "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate … good cause for seeking modification under Fed. R. Civ. P. 16(b)(4)" and, further, "satisfaction of the Rule 15(a) standard." *Id*. (internal quotation marks and citation omitted).

9

A. **Establishing "good cause" under F.R.C.P. 16.**

"Rule 16 of the Federal Rules of Civil Procedure requires a good cause showing." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). "It provides a scheduling order 'may be modified only for good cause and with the judge's consent.'" *Id*. (quoting F.R.C.P. 16(b)(4)). "In practice, this standard requires the movant"—here, ADA—"to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Id*. (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). "Rule 16's good cause requirement may be satisfied, for example, if" ADA shows that it "learn[ed] new information through discovery or if the underlying law has changed." *See id*.

B. **Requirements imposed under F.R.C.P. 15(a).**

As Atlas has already answered the First Amended Complaint, and opposes the requested relief, ADA may amend its complaint "only with … the court's leave." F.R.C.P. 15(a)(2). The decision on whether to provide "'… leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court[.]'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

With that said, "the Rule itself" expressly "states that 'leave shall be freely given when justice so requires.'" *Id*. (quoting F.R.C.P. 15(a)). "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Id*. (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)). "Lateness does not of itself justify the denial of the amendment." *Id*. Moreover, "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Id*. With respect to what constitutes "undue" delay, the Tenth Circuit

10

"focuses primarily on the reasons for the delay." *Id*. at 1206. Indeed, under Tenth Circuit precedent "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id*. (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

"The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Id*.; *see* 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (2d ed. 1990) ("Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading."). "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id*. (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir.1971).). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id*. (citing Tenth Circuit caselaw).

**2. Good cause exists to grant leave under Rule 16.**

Here, the circumstances demonstrate that good cause exists to allow for the amendment. As noted through excerpts above, Mr. Harrington's testimony is critically important to this case, and ADA's proof of wrongdoing on the part of Atlas. ADA, however, was not aware of Mr. Harrington, or the role he played in the operations of the Plant, until well after the deadline to amend, even as previously extended, expired in late December 2022. Although scheduling had its difficulties, once Mr. Harrington sat for the deposition, and counsel became aware of the substance of information that he possessed, counsel moved quickly to obtain a transcript of the testimony, and to seek leave of Court. Indeed, Mr. Harrington sat for his deposition little more

11

than two weeks ago. Considering the substance of the testimony, its importance, and the purpose with which counsel acted following the deposition, good cause exists for allowing the filing of the Second Amended Complaint.

**3.      Justice will be served by allowing amendment.**

For similar factual reasons, the circumstances show that leave to amend is proper under F.R.C.P. 15(a). Counsel moved quickly to seek relief from the Court on this issue. Moreover, the testimony provides grounds to seek additional and important avenues of relief for ADA. Mr. Harrington's knowledge, as a contractor of Atlas, is imputed to them by way of that relationship, and shows that Atlas made in negotiations were false when made, predictably proved hollow, and have deprived ADA of the opportunity it believed it had bargained for. Finally, there is no prejudice in allowing the amendment. Mr. Harrington's testimony has, presumably, long been known by Atlas, as he is its designated expert. Additionally, the factual substance of the testimony that ADA will rely on tracks specifically with the substance that this case has long been about—the performance of the parties under the Agreement, the ability of each to perform, and, moreover, the factual reasons for why,

In the interests of justice, and in accordance with the spirit of Rule 15, ADA should have the maximum opportunity to pursue the claims available to it.

## CONCLUSION

Based on the facts, law, and arguments set forth herein, the Court should grant leave to file the Second Amended Complaint.

Dated this 10th day of August, 2023.    Respectfully submitted,

LELAND SHAFFER LLP

By: _/s/ Maxwell N. Shaffer_
Maxwell N. Shaffer, Wyo. #7-5189
8694 E. 28th Ave.
Denver, Colorado 80238
Phone: 720.556.1872
Email: maxwell.shaffer@lelandshaffer.com

*Attorney for Plaintiff-Counterclaim Defendant ADA Carbon Solutions (Red River), LLC*