Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Macrina M. Sharpe (Wyo. State Bar # 7-5757)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: (307) 778-4200
JSPope@hollandhart.com
MMSharpe@hollandhart.com

ATTORNEYS FOR DEFENDANT/COUNTERCLAIM PLAINTIFF
ATLAS CARBON, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ADA CARBON SOLUTIONS (RED RIVER), LLC, a Delaware Limited Liability Company, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 1:22-cv-00161-SWS |
| ATLAS CARBON, LLC, a Wyoming Limited Liability Company, | |
| Defendant/Counterclaim Plaintiff. | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF ATLAS CARBON, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

### Introduction

Defendant/Counterclaim Plaintiff Atlas Carbon, LLC (Atlas) has never made a secret of its potential inability to produce activated carbon that would have a volatile number that met Plaintiff/Counterclaim Defendant ADA Carbon Solutions (Red River), LLC's (ADA) requested specification. The parties discussed that issue before executing the contract in this case. The contract contains provisions that deal with the potential for Atlas not meeting specifications. Atlas's defenses, counterclaims, experts, and discovery have centered on that issue. Whether that inability was from feedstock or technology matters not. ADA has known this case involved an

inability to meet specification. ADA's attempt to say this issue is new is not credible and does not rise to the level of good cause. Even so, Wyoming's economic loss rule bars ADA's proposed claims. Therefore, the Court should deny ADA's motion.[1]

## Legal Standard

ADA's motion comes after the scheduled December 23, 2022 deadline. (ECF No. 26). So it must demonstrate: 1) good cause under Rule 16(b)(4); and 2) satisfy the Rule 15(a) standard. *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018). Rule 16(b)(4) requires the moving party to show the "scheduling deadlines cannot be met despite [the movant's] diligent efforts. *Id.* at 1020 (citations omitted). A party cannot demonstrate good cause if they knew of the underlying conduct but simply failed to raise the claim. *See id*. A district court may also deny leave to amend "where amendment would be futile," meaning it would not survive a motion to dismiss or summary judgment. *Hinkle Family Fun Ctr., LLC v. Grisham*, 2022 U.S. App. LEXIS 35747, at *6 (10th Cir. Dec. 28, 2022) (quoting *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)); *Compton v. Rent-A-Center, Inc.*, 350 F. App'x 216, 221 (10th Cir. 2009) (citations omitted).

## Argument

**I.     ADA cannot show good cause because it could have raised its proposed claims much earlier.**

ADA claims depositions "provided information that was not previously made available to ADA, and, just as important, that it was not aware of." (ECF No. 58 at 3, ¶ 11.) This alleged new information relates to the limits of Atlas's technology and why those limits prevent Atlas from meeting the volatile specification in the Sales Agreement for Product. (ECF No. 64 at 11-12.)

---

[1] The Court can also deny the motion because ADA did not file its brief and proposed Second Amended Complaint after the Court's deadline to do so. Likewise, ADA exceeded the page limit in its brief. These procedural problems should bar the motion.

But this information is not new. It has been known to ADA as early as 2010. Here are some instances where ADA knew or should have known about this issue:

- November 30, 2010, ADA and Atlas's predecessor sign a license agreement that permits ADA's use of the technology Atlas currently uses at its plant in Gillette, Wyoming. (Attached as Exhibit A.[2])

- Fall 2021, Atlas ships product to ADA under a different commercial agreement that ADA admits is not within specifications. (Attached as Exhibit B.)

- September 24, 2021, emails between the parties concerning a letter of intent where Atlas notes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Attached as Exhibit C.)

- October 5, 2021, parties exchange a redline draft of the letter of intent, where someone comments, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Attached as Exhibit D.)

- October 27, 2021, parties execute the Sale Agreement for Product that contains: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Attached as Exhibit E.)

---

[2] Atlas did not produce exhibit A in discovery because it is not relevant to any of the claims and defenses. It has only become relevant based on ADA's current motion.

- January 20, 2022, ███████████████████████████████████

    ███████████████████████████████ (Attached as Exhibit F.)

- March 2, 2022, ADA emails a memo to Atlas, which noted ████████

    ██████████████████████████████████████ (Attached as

    Exhibit G at ADA000181.)

- March 3, 2022, summary of technical meeting between Atlas and ADA notes,

    ███████████████████████████████████████████████

    (Attached as Exhibit H at ACL002934.)

- June 2, 2022, internal ADA emails ████████████████████████

    ████████ (Attached as Exhibit I.)

- June 22, 2022, Atlas sends a letter to ADA noting ████████████████

    ███████████████████████████████████████

    ███████████████████████████████████████

    ██████████████████ (Attached as Exhibit J at ACL 0022.)

- June 24, 2022, ADA emails Atlas noting ███████████████████████

    ████████████████████████████████

    ████████ (Attached as Exhibit K at ACL 0052.)

- August 15, 2022, Atlas responds to ADA's request for a preliminary injunction and argues it is impossible for Atlas to perform the Agreement because it cannot meet specifications because the properties of its feedstock "make it impossible for Atlas to produce product with a low enough volatile to meet ADA specifications." (ECF 15 at 6.) Atlas attached a declaration from its CEO making these same factual statements. (*See* ECF No. 15-1.)

4

- August 17, 2022, Atlas files its Answer and Counterclaims. Affirmative Defense 7 is "Atlas's obligation, if any, to perform is discharged and/or excused by events that have render (sic) performance impossible or impracticable." (ECF No. 17 at 18.) Atlas's second counterclaim also raised the issue that performance was impossible. (*See id.* at 24, ¶¶ 41, 44-45.)

- February 27, 2022, ADA served discovery on Atlas where several requests sought information about Atlas's inability to meet specifications, including: 1) interrogatories that asked to explain why Atlas's samples proved it could not meet specifications and to identify documents that support that Atlas learned after the Agreement that it could not meet specifications due to inherent chemical properties in the feedstock; and 2) a request for production that sought documents "that identify, discuss, or reference the PRB Coal Feedstock, the chemical properties of the PRB Coal Feedstock, or that the chemical properties of the PRB Coal Feedstock prevents Atlas from being able to deliver Product to ADA that meets the Specifications." (*See* ECF No. 64-2 at 14, 22.[3])

- March 22, 2022, ADA designates its Chief Technology Officer as an expert to provide testimony that ADA has used similar feedstock to achieve the volatile specification. (ECF Nos. 42, 42-2.)

- April 27, 2022, Atlas designated two expert witnesses to opine about: 1) "how the plant functions and how it is set up to produce product for multiple Atlas customers and how the plant's set up, operations, and economics preclude meeting certain

---

[3] ADA notes that Atlas did not respond to three interrogatories because they exceeded the maximum allowable number. Importantly, ADA has never challenged Atlas's position through a meet and confer letter or a motion to compel.

specifications, including the volatility specification, required by the contract between Atlas and ADA Carbon Solutions (Red River), LLC ("ADA")"; and 2) "how the plant functions and why its configuration and the coal feedstock used at the plant does not allow Atlas to meet certain specifications, including the volatility specification, required by the contract between Atlas and ADA." (ECF No. 49 at 1-3.)

These are just some examples; dozens of emails exchanged in discovery discuss the problem with specifications or Atlas's inability to meet them. Deposition testimony also shows this issue has been known for a long time:



(*See* ECF No. 64-6 at 43:6-15; *see also id.* at 40:17-41:4.)

The above shows ADA knew about Atlas's technology, Atlas's concern about meeting the volatile specification, Atlas's inability to meet the volatile specification, Atlas's defense of impossibility, and Atlas's counterclaim related to inability to meet specifications long before the deadline to amend. Likewise, ADA specifically designated an expert, conducted discovery, and received discovery months ago that notified ADA of these issues. *LeDerman v. Boston SCI. Corp.*, 2023 U.S. Dist. LEXIS 41117, *5 (D. Colo. 2023) (denying leave to amend because evidence for amendment was available years before the request.)

---

[4] The referenced tour occurred in September 2021.

To be sure, ADA did not know every technical detail until it took depositions. But knowing those details were not necessary. ADA knew about the warranty in the contract and Atlas not meeting specifications from the very start of the parties' relationship. Further, ADA's long-held knowledge of the specification and technology issues would have allowed it to conduct depositions or at least seek that information earlier. In short, ADA had everything it needed long before the case began. It simply chose not to assert those claims until the eve of trial. *Birch v. Polaris Indus.*, 812 F.3d 1238, 1248 (10th Cir. 2015) (affirming denial of leave to amend because party had knowledge of the underlying conduct but failed to raise the claim.)

Critically, ADA admits it knew about the specification issue and Atlas's impossibility defense; so it attempts to distinguish between that knowledge and Mr. Harrington explaining that the limits of Atlas's technology as the sole reason that prevents meeting the volatile specification. (ECF No. 64 at 6-9.) But ADA misrepresents what Mr. Harrington said. Mr. Harrington explained Powder River Basin coal has lots of pores that fill with volatile material, which gets removed in the activation process. (*See* ECF No. 64-7 at 63:15-64:14.) He then explained that Atlas's technology limits how long the feedstock can be heated and how much heat the equipment can sustain, which limits how much volatile material gets removed. (*Id.* at 58:21-60:13 61:12-62:9, 63:3-10.) Therefore, both the inherent nature of the feedstock and Atlas's technology matter. And ADA knew about both long ago.

Still, none of this should matter. Whether Atlas's inability to meet specification arose because of feedstock, technology, or both, ADA had full knowledge and ability to allege the claims in its proposed Second Amended Complaint before it filed its original Complaint. This also means the deposition scheduling problems do not matter because ADA could have alleged

that Atlas knew it could not meet specifications before signing the contract.[5]

## II.  An amendment now would be an injustice.

Contrary to the title of its pleading, ADA seeks to restart the case. ADA's motion notes it will be making a request "for the Court to continue the trial date, to allow the Court to properly consider the motion, Atlas's opposition, and adjustments to scheduling and discovery in the event that the Court grants the requested relief." (ECF No. 58 at 4, ¶ 15.) Starting the case over less than 3 weeks before trial would prejudice Atlas, contrary to the interests of justice. *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (explaining prejudice is a factor when determining leaving to amend); *see also Woods v. Nationbuilders Ins. Servs.*, 2014 U.S. Dist. LEXIS 38414, *9 (D. Colo. 2014) (finding late amendment would create prejudice.) A restart would drive up the already spent costs to pursue claims available to ADA at the start. This is particularly problematic given ADA is a much larger company than Atlas with the ability to fight a battle of attrition and spend Atlas into the ground. Atlas is ready to try the case as it currently stands, an amendment now would condemn the parties to more litigation on a futile claim.

## III.  ADA's proposed new claims are futile because of the economic loss rule.

In cases involving breach of contract, Wyoming's economic loss rule bars tort claims "when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 15, 228 P.3d 40, 45 (Wyo. 2010) (internal quotations and citations omitted); *see JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo. 1992) ("[T]ort liability can only be premised on a duty independent of contractual duties."). The rule is "founded on the theory that parties to a contract

---

[5] As the emails attached to ADA's brief show, the scheduling issues arose because ADA failed to send notices until a day before an available date. Still, Atlas worked to reschedule.

may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *Excel Constr., Inc.*, 2010 WY 34, ¶ 15, 228 P.3d at 45. Here, the proposed Second Amended Complaint alleges fraudulent inducement that seeks purely economic damages. (ECF No. 64-9 at 35.) The economic loss rule bars this claim. Therefore, the Second Amended Complaint would be subject to dismissal and futile. *See Hinkle Family Fun Ctr., LLC*, 2022 U.S. App. LEXIS 35747, at *6.

ADA may suggest the economic loss rule does not apply because it alleges fraud that occurred before the contract. But this district has already rejected that theory by dismissing a fraudulent inducement claim under the economic loss rule. (*See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, *MO POW 3, LLC and MO POW 4, LLC v. Crypto Infiniti, LLC*, 1:22-CV-155 at 14-18, attached hereto as Exhibit L.[6]) In *MO POW 3*, the Court relied on a recent Wyoming Supreme Court case that applied the economic loss rule to bar fraud and intentional misrepresentation claims. *See Skyco Resources, LLP v. Family Tree Corporation*, 2022 WY 72, ¶ 32, 512 P.3d 11, 27-28 (Wyo. 2022). In *Skyco*, the Wyoming Supreme Court looked at whether the fraud claim is a repackaged contract claim by evaluating "the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed." *Id.* at 38.

Here, ADA's fraudulent inducement claim repackages a breach of contract claim about the warranties in the contract. ADA admits as much in its brief, noting "[c]ritical both to the pending motion to amend, and this litigation in general, ADA's specification requirements for the contracted-for activated carbon were a significant part of the negotiations process. In light of

---

[6] Atlas removed one of its confidential exhibits prior to filing that resulted in re-lettering its exhibits. Exhibit L is not confidential.

the stated factual basis for Atlas's counterclaims, it is curious to note that the final as-signed version of the Agreement contained an express warranty, contained in Section 8, binding Atlas to the specifications." (ECF No. 64 at 9.) In other words, ADA's fraud claim asserts Atlas breached the warranties in Section 8. Therefore, the economic loss rule still applies. *See Skyco Resources, LLP*, 512 P.3d at 28.

The economic loss rule also means that ADA's veil piercing claim is futile because it relies on a statute that allows veil piercing if fraud occurs. *See* Wyo. Stat. Ann. § 17-29-304(c)(i). The bar on ADA's fraud claim also means that it has no allegations in the proposed Second Amended Complaint to support any of the other bases for veil piercing like inadequate capitalization. *See id.* at (c)(ii). Therefore, the claim would be subject to dismissal for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## Conclusion

For the reasons above, Atlas requests the Court deny ADA's motion. Atlas also requests the Court award it fees for having to respond to the motion because the evidence demonstrates ADA could have made this claim but chose not to until the eve of trial, forcing Atlas to incur expenses to respond.

DATED: August 11, 2023.

/s/ Jeffrey S. Pope
Jeffrey S. Pope (Wyo. State Bar # 7-4859)
Macrina M. Sharpe (Wyo. State Bar # 7-5757)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: (307) 778-4200
JSPope@hollandhart.com
MMSharpe@hollandhart.com
ATTORNEYS FOR DEFENDANT/COUNTERCLAIM
PLAINTIFF ATLAS CARBON, LLC