Maxwell N. Shaffer, Wyo. #7-5189
Leland Shaffer LLP
8694 E. 28th Ave.
Denver, Colorado 80238
Phone:       720.556.1872
Email:       maxwell.shaffer@lelandshaffer.com

*Attorney for Plaintiff-Counterclaim Defendant*
*ADA Carbon Solutions (Red River), LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ADA CARBON SOLUTIONS (RED RIVER), LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>v.<br><br>ATLAS CARBON, LLC, a Wyoming Limited Liability Company,<br><br>    Defendant-Counterclaim Plaintiff. | Case No. 1:22-cv-00161-SWS |

**ADA CARBON SOLUTIONS (RED RIVER), LLC'S RESPONSE IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

ADA Carbon Solutions (Red River), LLC ("Plaintiff" or "ADA") files this response in opposition to Atlas Carbon, LLC ("Atlas")'s Motion for Protective Order and Brief in Support (Doc. 68) (the "Motion").

**INTRODUCTION**

Atlas seeks a protective order to prevent ADA from calling David Sherman, a New Orleans-based lawyer that represents Atlas on corporate matters, as a witness at trial. ADA has listed Mr. Sherman as a "may-call" witness in this matter, and specifically to testify regarding his discussions with Atlas about a notice of force majeure that Atlas served on ADA on July 5,

2023. Atlas claims Mr. Sherman should not be permitted to testify on this subject matter on the basis that the communications, and associated subject matter, are privileged. Atlas is mistaken. Reza Hashampour, the company's Chief Executive Officer, waived privilege as to the advice Mr. Sherman provided Atlas regarding the force majeure during his June 2023 deposition. The Court should reject the Motion and determine that Mr. Sherman may be called to testify at trial.

## FACTUAL BACKGROUND

**1.      Agreement and force majeure provision.**

This matter involves multiple disputes associated with a Sales Agreement for Products that Atlas and ADA entered into effective November 1, 2021 (Doc. 35-1) (the "Agreement"). Under the Agreement, Atlas agreed to deliver, and ADA agreed to purchase, certain amounts of activated carbon that Atlas produced from Powder River Basin coal ("PRB Coal") at Atlas's manufacturing plant in Gillette, Wyoming (the "Plant").

Among multiple provisions, the Agreement includes a force majeure provisions, which provides in pertinent part:

> 12. **FORCE MAJEURE**. If performance of this Agreement or any obligation under this Agreement is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, without limitation, acts of God, plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, changes in laws or regulations that make performance impossible or economically or financially impractical or supplier failures that are not reasonably foreseeable to the extent such events actually affect performance. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused or exacerbated by such party, or its employees, officers, agents, or affiliates.

(*Id*. at pp. 4-5, § 12.)

2.     **Pricing dispute and force majeure notice.**

Just six months after executing the Agreement, Atlas started a campaign of pressure designed to coerce ADA into agreeing to increase the amount it was required under the contract to pay for the activated carbon that Atlas produced.  (January 4, 2023 Amended Complaint (Doc. 35) ("Am. Compl.") ¶ 2.)  In late June, through its VP of Sales and Marketing, Amy Cooper, Atlas claimed that it had "been advising ADA of the need for a price increase since 26 April 2022."  (*Id*. ¶ 3.)  Atlas then demanded that "*Price change is necessary*" for Atlas "*to continue supplying ADA*."  (*Id*. (emphasis in original).)  Following receipt, by email ADA requested confirmation from Atlas that it would continue to supply activated carbon as required under the Agreement.  (*Id*. ¶ 4.)  Atlas did not respond.

Instead, on July 5, 2022, Mr. Hashampour served ADA with a "notification of 3rd party Force Majeure events" under Section 12 of the Agreement.  (**Exhibit 1**, July 5, 2022 Letter from R. Hashampour to G. Marken In re: Notification of Force Majeure for Sales Agreement for Products dated November 1, 2021 (the "FM Notice").)  Atlas maintained that these events forced it to "suspend deliveries" to ADA under the Agreement, cease its performance, and "[delay] the implementation of the" Parties' "three (3) year commercial Agreement."  (*Id*.)  ADA responded through counsel, by a letter dated July 6, 2022.  (**Exhibit 2**, July 6, 2022 Letter from M. Shaffer to R. Hashampour Re: ATLAS Notification of Force Majeure received July 5, 2022.)  Therein, ADA requested that Atlas immediately reinitiate performance and, further, demanding that Atlas provide sufficient written assurances of compliance with the Agreement by 5:00 p.m. mountain time on July 7, 2022. (*Id*. at p. 3.)  As with ADA's previous request for assurances, Atlas did not response.

1.      Five days later, on July 11, 2022, counsel for ADA received a letter from David Sherman, an attorney with Chehardy Sherman Williams Recile Hayes LLP in Metairie, Louisiana.  (**Exhibit 3**, Letter from D. Sherman to M. Shaffer Re: ADA Carbon Solutions (Red River), LLC ("ADA")/Atlas Carbon, LLC ("Atlas").)  According Mr. Sherman, the "facts and circumstances" that Mr. Hashampour presented in the FM Notice demonstrated "that this situation is a **CLASSIC** case of 'Force Majeure.'"  (*Id*. at p. 1 (emphasis in original).)  Mr. Sherman, however, indicated that there was no "need" for the Parties "to argue about 'Force Majeure[,]'" explaining:

> The fact of the matter is, the Sales Agreement for Products clearly provides that ADA and Atlas are currently in a Trial Period. The very purpose of this Trial Period is to make certain that this Sales Agreement for Products works for both ADA and Atlas. During the Trial Period, either of our Clients can terminate the Agreement. Therefore, Atlas is not in default of the Agreement.

(*Id*.)  Mr. Sherman concluded that "[t]he 'Force Majeure' events and other facts/circumstances have made it impossible for Atlas to perform under the *current* Sales Agreement for Products." (*Id*. at p. 2 (emphasis added).)  "However," according to Mr. Sherman, "if ADA" wanted "to discuss a different structure," for the Agreement, he stated that "Atlas" would be "more than glad to engage in such a discussion."  (*Id*.)  In other words, with this letter, Atlas's attorney suggests that the FM Notice was served simply to gain leverage with ADA over its pricing demands.  (*See id*.)

3.      **Mr. Hashampour waives privilege over force majeure advice from Sherman.**

ADA took the deposition of Reza Hashampour on June 27, 2023.  Therein, counsel for ADA questioned him on both the force majeure notice, the basis for it, and the motivations for serving it.

Mr. Hashampour testified that "economically, it" had gotten "very expensive for [Atlas] to produce" the activated carbon product, and that the FM Notice "was a course of action that we

took" to respond to the economic pressures. (Doc. 68-1, Dep. of Reza Hashampour ("Hashampour Dep.") at 236:16-22.) When asked if there were internal discussions among Atlas executives as to whether or not to serve the FM Notice, Mr. Hashampour indicated that there were not, and "when it came to" the FM Notice, Atlas "just talked to [its] attorney." (*Id*. at 239:12-19.) When asked again about the subject matter, Mr. Hashampour testified that "this thing," i.e., the FM Notice, "we talked to our counsel," and "that's the course of action we took." (*Id*. at 245:25-246:5.) When asked directly if the FM Notice "was served on – based on the advice of counsel" Mr. Hashampour confirmed: "[t]his was based on advice of counsel, and that's all I can say." (*Id*. at 246:6-9.) On mult8ple occasions during his testimony, Mr. Hashampour confirmed that the FM Notice was the direct product of advice of counsel. (*See, e.g., id*. at 249:23-250:6 (when asked if it was accurate that Atlas intended the FM Notice as a tool to get ADA to agree to a price increase, Mr. Hashampour testified that "[i]t just was-it's just the fact that we talked to our counsel. This letter represents that conversation. If ADA chooses, fine. If they didn't, [they] didn't. And that's the end of that. It's not that complicated for us."). When asked what cause unexpectedly prevented, restricted, or interfered with Atlas's ability to carry out its obligations under the Agreement, Mr. Hashampour testified:

> Mr. Shaffer, I have shared with you, sir, four times that *we talked to our counsel about where we were, that counsel shared with us, and we executed on that conversation on advice of counsel*. And what you are asking me is in these contracts that you highlighting for me is I am not a lawyer, contracting lawyer.
>
> Only thing that I can share with you, which I have in good faith of the reason we are talking – we talked to your client, and then we felt like that we just – we just could not proceed any further. We spoke to our counsel. And after that, I can tell you what the conversation was.
>
> And now you having me to read the force majeure and explain to you what my understanding is. *The course was taken and charted with our attorney and that was delivered to your client.*

5

(*Id.* at 257:10-20 (emphasis added).)

As for the circumstances surrounding service of the FM Notice, Mr. Hashampour confirmed that in 2022 Atlas requested a price increase from each of its customers, including ADA. One hundred percent of the customers, with one exception, agreed to the price increase. The one exception was ADA. Perhaps of no coincidence, Mr. Hashampour confirmed that Atlas served only one notice of force majeure on a customer: ADA. (*See id.* at 241:4-9.) Mr. Hashampour also confirmed that Atlas did not shut down the Plant either before or following service of the FM Notice on ADA. (*See id.* at 260:3:4.) In doing so, he explained:

> No, we did not. Do you know why? Because every customer, with the exception of ADA, accepted the price increase.

(*Id.* at 260:4-6.) With suspension of any and all deliveries to ADA in place, Mr. Hashampour testified that the Plant remained up and running, and Atlas continued delivering activated carbon product to each and every one of its customers, except for ADA. (*See id.* at 260:12-261:8.)

## ARGUMENT

1. **Legal Standard.**

    A.   **Protective Order under Fed. R. Civ. P. 26(c).**

Atlas's request for a protective order is evaluated under Rule 26(c)(1). It provides that the Court "may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." F.R.C.P. 26(c)(1) (emphasis added). "The good cause standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Siegel v. Blue Giant Equip. Corp.*, 793 Fed. Appx. 737, 744 (10th Cir. 2019) (internal quotation marks and citations omitted). It follows, therefore, that the Rule "confers broad discretion on the trial court to decide when a protective

order is appropriate and what degree of protection is required." *Id*. (internal quotation marks and citations omitted).

      **B.**      **"Advice of counsel" waiver of attorney client privilege.**

"In diversity cases such as this, the federal courts have concluded that issues of attorney-client privilege are substantive and are, therefore, controlled by the law of the forum state." *Indemnity Ins. Co. of N. Am. v. Pettit*, Case No. 04-CV-023-B, 2005 WL 8155476, *2 (D. Wyo. Oct. 27, 2005); *see* Fed. R. Evid. 501. "In Wyoming, the attorney-client privilege only applies to 'communications' between an attorney and a client." *Salzer v. State Farm Mut. Auto. Ins. Co.*, Case No.: 18-CV-36-ABJ, 2019 WL 13222747, *3 (D. Wyo. Feb. 20, 2019). "However," the "Wyoming Supreme Court has recognized that when a party relies upon the defense of 'advice of counsel', the privilege may have been waived." *Id*. (quoting *Oil, Chemical and Atomic Workers Int'l Union v. Sinclair Oil Corp.*, 748 P.2d 283, 290 (Wyo. 1987).); *see McCarty v. Liberty Mut. Ins. Co.*, 2017 WL 676459, * (D. Wyo. Feb. 3, 2017) (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir. 2000) (discussing implied waiver where holder asserts a claim that in fairness requires examination of protected communications); *see also Roesler v. TIG Ins. Co.*, 251 Fed. Appx. 489, 500 (10th Cir. 2007) ("It is only when such advice becomes at issue in a *legal proceeding* that the client may be required to disclose the advice of counsel under a theory of implied waiver.") (emphasis in original).

**2.**      **Mr. Hashampour waived privilege as to advice given on the FM Notice.**

Here, Mr. Hashampour's testimony makes clear that Atlas will attempt to justify its actions in serving the FM Notice in this matter through claims that it was relying on the advice of its counsel, Mr. Sherman. Service of the FM Notice precipitated the filing of this lawsuit, and interrupted deliveries of activated carbon to ADA to such an extent that the Parties' business

7

relationship, and the ability of ADA to order product from Atlas, were both fundamentally broken. When asked for the reasons and basis for serving the FM Notice, Mr. Hashampour could offer little more than the company's attorney told him to. Atlas's communications with counsel, therefore, regarding the FM Notice, have been placed at issue in the matter, and, in fairness, ADA should be allowed to question Mr. Sherman, and offer the testimony as evidence at trial.

## CONCLUSION

Based on the facts, law, and arguments set forth herein, the Court should reject Atlas's request for a protective order and, further, grant leave for ADA to offer testimony from Mr. Sherman at trial on the narrow issue of advice provided to Atlas regarding the FM Notice.

Dated this 16th day of August, 2023.

Respectfully submitted,

LELAND SHAFFER LLP

By: /s/ Maxwell N. Shaffer
Maxwell N. Shaffer, Wyo. #7-5189

*Attorney for Plaintiff-Counterclaim Defendant ADA Carbon Solutions (Red River), LLC*