APPEAL,PROTO,TERMED

# U.S. District Court
## District of Wyoming (Casper)
## CIVIL DOCKET FOR CASE #: <u>1:22−cv−00161−SWS</u>
### *Internal Use Only*

| | |
|---|---|
| ADA Carbon Solutions (Red River) LLC v. Atlas Carbon LLC | Date Filed: 07/25/2022 |
| Assigned to: Honorable Scott W Skavdahl | Date Terminated: 01/18/2024 |
| Referred to: Honorable Kelly H Rankin | Jury Demand: None |
| Cause: 28:1332 Diversity−Breach of Contract | Nature of Suit: 190 Contract: Other |
| | Jurisdiction: Diversity |

**<u>Plaintiff</u>**

**ADA Carbon Solutions (Red River) LLC**
*a Delaware limited liability company*

represented by **Maxwell N Shaffer**
LELAND SHAFFER LLP
8694 E. 28th Ave.
Denver, CO 80238
720−556−1872
Email: maxwell.shaffer@lelandshaffer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Leland**
Leland Shaffer LLP
8694 E. 28th Ave.
Denver, CO 80238
303−961−8072
Email: thomas.leland@lelandshaffer.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Atlas Carbon LLC**
*a Wyoming limited liability company*

represented by **Isaac Nathan Sutphin**
HOLLAND & HART LLP
2020 Carey Avenue
Suite 800
Cheyenne, WY 82001
307−778−4200
Fax: 307−778−8175
Email: insutphin@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Scott Pope**
HOLLAND & HART LLP
2020 Carey Avenue
Suite 800

Cheyenne, WY 82001
307–778–4200
Fax: 307–778–8175
Email: jspope@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Macrina Margaret Sharpe**
Holland & Hart LLP
2020 Carey Avenue
Ste 800
Cheyenne, WY 82001
307–778–4227
Email: mmsharpe@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Atlas Carbon LLC**                      represented by   **Isaac Nathan Sutphin**
*a Wyoming limited liability company*                      (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jeffrey Scott Pope**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Macrina Margaret Sharpe**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**ADA Carbon Solutions (Red River)**      represented by   **Maxwell N Shaffer**
**LLC**                                                   (See above for address)
*a Delaware limited liability company*                    *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Thomas Leland**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/25/2022 | 1 | COMPLAINT  **Counsel – payment is due within three calendar days. To pay the filing fee with a credit card, please use the event Notice of Civil Filing Fee in CM/ECF or send a check to the Clerk of US District Court, 2120 Capitol** |

| | | |
|---|---|---|
| | | **Avenue Room 2131, Cheyenne, WY 82001**, filed by ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Civil Cover Sheet) (Court Staff, scat) (Additional attachment(s) added on 7/25/2022: # 2 Non–Public Complaint, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5) (Court Staff, scat). Modified text on 7/25/2022 (Court Staff, scat). (Entered: 07/25/2022) |
| 07/25/2022 | 2 | MOTION for Order to File Unredacted Verified Complaint, Exhibits to Verified Complaint, Motion for Preliminary Injunction, and Brief in Support of Motion for Preliminary Injunction as Non–Public filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Court Staff, scat) (Entered: 07/25/2022) |
| 07/25/2022 | | Motions No Longer Referred: 2 MOTION for Order File Unredacted Verified Complaint, Exhibits to Verified Complaint, Motion for Preliminary Injunction, and Brief in Support of Motion for Preliminary Injunction as Non–Public (Court Staff, scat) (Entered: 07/25/2022) |
| 07/25/2022 | 3 | ORDER by the Honorable Scott W Skavdahl granting 2 Motion for Leave to File Unredacted Documents as Non–Public. Plaintiff's unredacted complaint with exhibits and its unredacted motion for preliminary injunction with supporting brief may be filed as non–public documents. It is Further Ordered that within two days of the date of this Order, Plaintiff shall file a redacted motion for preliminary injunction with supporting brief that will be accessible by the public. (Court Staff, scat) (Entered: 07/25/2022) |
| 07/25/2022 | 4 | WITHDRAWN – See ECF 18 . NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – MOTION for Preliminary Injunction filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Court Staff, scat) Modified on 8/18/2022 (Court Staff, skb). (Entered: 07/25/2022) |
| 07/25/2022 | 5 | NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – BRIEF in Support of 4 Motion for Preliminary Injunction filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Court Staff, scat) (Entered: 07/25/2022) |
| 07/25/2022 | | Notice of Civil Case Filing Fee Payment – filed by Plaintiff ADA Carbon Solutions (Red River) LLC. Filing fee $ 402, receipt number AWYDC–2131600. (Shaffer, Maxwell) (Entered: 07/25/2022) |
| 07/26/2022 | 6 | (TEXT–ONLY) NOTICE of Evidentiary Hearing on 4 MOTION for Preliminary Injunction IN–PERSON. **Motion Hearing set for 8/18/2022 at 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, skb) (Entered: 07/26/2022) |
| 07/26/2022 | 7 | Praecipe for Summons in a Civil Action filed by Plaintiff ADA Carbon Solutions (Red River) LLC (Shaffer, Maxwell) (Entered: 07/26/2022) |
| 07/26/2022 | 8 | Summons Issued. (Court Staff, skb) (Entered: 07/26/2022) |
| 07/27/2022 | 9 | REDACTED MOTION for Preliminary Injunction filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit Brief in Support of Motion for Preliminary Injunction)(Shaffer, Maxwell) Non Public documents can be found at 4 Motion and 5 Brief. Modified text on 7/29/2022 (Court Staff, scat). (Entered: 07/27/2022) |
| 08/03/2022 | 10 | SUMMONS Returned Executed by ADA Carbon Solutions (Red River) LLC. Atlas Carbon LLC served on 7/27/2022, answer due on 8/17/2022 (Shaffer, Maxwell) |

| | | (Entered: 08/03/2022) |
|---|---|---|
| 08/05/2022 | 11 | NOTICE of Attorney Appearance by Jeffrey Scott Pope on behalf of Atlas Carbon LLC (Pope, Jeffrey) (Entered: 08/05/2022) |
| 08/05/2022 | 12 | NOTICE of Attorney Appearance by Macrina Margaret Sharpe on behalf of Atlas Carbon LLC (Sharpe, Macrina) (Entered: 08/05/2022) |
| 08/08/2022 | 13 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Time to Respond to Plaintiff's Motion for Preliminary Injunction filed by Defendant Atlas Carbon LLC. (Attachments: # 1 Proposed Order)(Pope, Jeffrey) (Entered: 08/08/2022) |
| 08/09/2022 | 14 | ORDER by the Honorable Kelly H Rankin granting 13 Motion for Extension of Time. Defendant Atlas Carbon, LLC's Response to Plaintiff's Motion for Preliminary Injunction is due on August 15, 2022. (Court Staff, sjgc) (Entered: 08/09/2022) |
| 08/15/2022 | 15 | RESPONSE to 4 Motion for Preliminary Injunction filed by Defendant Atlas Carbon LLC. (Attachments: # 1 Exhibit A, # 2 Proposed Order Denying Plaintiff's Motion for Preliminary Injunction as Moot and Vacating the August 18, 2022 Hearing) (Sharpe, Macrina) (Entered: 08/15/2022) |
| 08/16/2022 | 16 | (TEXT–ONLY) ORDER by the Honorable Scott W Skavdahl. This matter comes before the Court on its review of 15 Defendants response to Plaintiffs motion for preliminary injunction. Absent stipulation by both parties, the motion hearing set for August 18, 2022, at 9:00 a.m. will proceed as scheduled. (Court Staff, skb) (Entered: 08/16/2022) |
| 08/17/2022 | 17 | ANSWER to 1 Complaint, COUNTERCLAIM against Counter–Defendant ADA Carbon Solutions (Red River) LLC by Atlas Carbon LLC. (Sharpe, Macrina) Modified text on 8/17/2022 (Court Staff, skb). (Entered: 08/17/2022) |
| 08/17/2022 | 18 | NOTICE of Withdrawal of 4 Motion for Preliminary Injunction and Stipulation to Vacate Associated Hearing by Plaintiff ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) Modified text on 8/18/2022 (Court Staff, skb). (Entered: 08/17/2022) |
| 08/17/2022 | 19 | (TEXT–ONLY) ORDER by the Honorable Scott W Skavdahl withdrawing 4 Motion for Preliminary Injunction and vacating motion hearing. Upon Plaintiff's Notice of Withdrawal of Motion for Preliminary Injunction and Stipulation to Vacate Associated Hearing 18 , the Court grants Plaintiff's request to withdraw its motion for preliminary injunction and vacates the 8/18/2022 motion hearing. (Court Staff, swe) (Entered: 08/17/2022) |
| 09/07/2022 | 20 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Time to Answer Defendant's Counterclaims filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) (Entered: 09/07/2022) |
| 09/09/2022 | 21 | ORDER by the Honorable Kelly H Rankin granting 20 Motion for Extension of Time. Plaintiff shall have up to and including September 12, 2022 to answer or otherwise respond to Defendant's Counterclaims.(Court Staff, sjdl) Modified text on 9/9/2022 (Court Staff, skb). (Entered: 09/09/2022) |
| 09/12/2022 | 22 | |

| | | |
|---|---|---|
| | | ANSWER to <u>17</u> Counterclaim by ADA Carbon Solutions (Red River) LLC. (Attachments: # <u>1</u> Exhibit) (Court Staff, sjlg) (Entered: 09/12/2022) |
| 09/14/2022 | 23 | (TEXT–ONLY) NOTICE of Initial Pretrial Conference: BY TELEPHONE – All parties shall appear by telephone through the Court's conference call system. Guests call: 307–735–3644 Conference ID: 275 440 149#. Parties should have their calendars on hand for scheduling. Under Local Rule 16.1(a)(2) the parties are reminded to file a written Joint Case Management Plan three business days prior to the Initial Pretrial Scheduling Conference. The Plan form may be located at www.wyd.uscourts.gov/judges–info under Judge Rankin. **Initial Pretrial Conference set for 10/25/2022 at 09:00 AM before Honorable Kelly H Rankin.** (Court Staff, smxb) (Entered: 09/14/2022) |
| 10/21/2022 | 24 | (TEXT–ONLY) NOTICE Resetting Initial Pretrial Conference: BY TELEPHONE –All parties shall appear by telephone through the Court's conference call system. Guests call: 307–735–3644 Conference ID: 275 440 149#. Parties should have their calendars on hand for scheduling. Under Local Rule 16.1(a)(2) the parties are reminded to file a written Joint Case Management Plan three business days prior to the Initial Pretrial Scheduling Conference. The Plan form may be located at www.wyd.uscourts.gov/judges–info under Judge Rankin. **Initial Pretrial Conference reset for 10/26/2022 at 09:00 AM before Honorable Kelly H Rankin.** (Court Staff, smxb) (Entered: 10/21/2022) |
| 10/21/2022 | <u>25</u> | JOINT CASE MANAGEMENT PLAN by ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) (Entered: 10/21/2022) |
| 10/26/2022 | <u>26</u> | INITIAL PRETRIAL ORDER by the Honorable Kelly H Rankin. Amendment of Pleadings deadline 12/23/2022. Dispositive Motions filing deadline 6/14/2023. Dispositive Motion response deadline 6/28/2023. **Dispositive Motions Hearing set for 7/18/2023 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** Other Fact Witness Deadline 5/5/2023 Expert Witness Designation–Plaintiff deadline 3/6/2023. Expert Witness Designation–Defendant deadline 4/5/2023. Discovery due by 6/14/2023. Stipulation Deadline 7/19/2023. Motion in Limine deadline 7/19/2023. Motions in Limine Response Deadline 7/26/2023. **Final Pretrial Conference set for 8/8/2023 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Bench Trial (5 days/Stacked #1) set for 8/28/2023 at 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, smxb) (Entered: 10/26/2022) |
| 10/26/2022 | <u>27</u> | MOTION REFERRED TO Judge Kelly H Rankin. Joint MOTION for Protective Order *Stipulated* filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # <u>1</u> Proposed Order Stipulated Protective Order)(Shaffer, Maxwell) (Entered: 10/26/2022) |
| 10/27/2022 | <u>28</u> | ORDER by the Honorable Kelly H Rankin granting <u>27</u> Motion for Protective Order. The parties shall follow the procedures as set forth in the Order. (Court Staff, sjdl) (Entered: 10/27/2022) |
| 12/23/2022 | <u>29</u> | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Amended Complaint Deadline filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # <u>1</u> Proposed Order)(Shaffer, Maxwell) (Entered: 12/23/2022) |

| 12/27/2022 | 30 | ORDER by the Honorable Kelly H Rankin granting 29 Motion for Extension of Time. Plaintiff's deadline to seek leave from to Court to file an amended Complaint is extended up to and including December 27, 2022. (Court Staff, sjgc) (Entered: 12/27/2022) |
|---|---|---|
| 12/27/2022 | 31 | MOTION REFERRED TO Judge Kelly H Rankin. Second MOTION for Extension of Time (Non–Dispositive) requesting extension of Amended Complaint Deadline filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) (Entered: 12/27/2022) |
| 12/28/2022 | 32 | ORDER by the Honorable Kelly H Rankin granting 31 Motion for Extension of Time. ADA's deadline to seek leave from to Court to file an amended Complaint is extended up to and including December 29, 2022. (Court Staff, sjgc) (Entered: 12/28/2022) |
| 12/29/2022 | 33 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION to Amend/Correct 1 Complaint, filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) Modified text on 12/30/2022 (Court Staff, skb). (Entered: 12/29/2022) |
| 12/30/2022 | 34 | ORDER by the Honorable Kelly H Rankin granting 33 Unopposed MOTION to Amend/Correct 1 Complaint. Plaintiff may file an amended complaint within three business days. (Court Staff, sjgc) (Entered: 12/30/2022) |
| 01/04/2023 | 35 | AMENDED COMPLAINT against Defendant Atlas Carbon LLC, filed by ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) (Additional attachments added as non–public on 1/5/2023: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (Court Staff, skb). (Entered: 01/04/2023) |
| 01/18/2023 | 36 | ANSWER to 35 Amended Complaint, with Affirmative Defenses, by Atlas Carbon LLC. (Pope, Jeffrey) (Entered: 01/18/2023) |
| 02/15/2023 | 37 | NOTICE of Change of Address by Maxwell N Shaffer, attorney on behalf of ADA Carbon Solutions (Red River) LLC (Shaffer, Maxwell) (Entered: 02/15/2023) |
| 03/06/2023 | 38 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Expert Witness Deadlines of the Parties filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) (Entered: 03/06/2023) |
| 03/07/2023 | 39 | ORDER by the Honorable Kelly H Rankin granting 38 Motion for Extension of Time. Expert Witness Designation–Plaintiff deadline 3/15/2023. Expert Witness Designation–Defendant deadline 4/14/2023. (Court Staff, sjdl) (Entered: 03/07/2023) |
| 03/15/2023 | 40 | MOTION REFERRED TO Judge Kelly H Rankin. Second MOTION for Extension of Time (Non–Dispositive) requesting extension of Expert Witness Deadlines of the Parties filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) (Entered: 03/15/2023) |
| 03/16/2023 | 41 | ORDER by the Honorable Kelly H Rankin granting 40 Motion for Extension of Time. Expert Witness Designation–Plaintiff deadline 3/22/2023. Expert Witness Designation–Defendant deadline 4/21/2023. (Court Staff, sjdl) (Entered: 03/16/2023) |

| 03/22/2023 | 42 | Designation of Expert Witnesses Under Fed. R. Civ. P. 26(a)(2) by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit George Expert Report (Redacted), # 2 Exhibit Wong Declaration) (Shaffer, Maxwell) Modified text on 3/24/2023 (Court Staff, skb). (Entered: 03/22/2023) |
|---|---|---|
| 03/31/2023 | 43 | NOTICE of Change of Address by Jeffrey Scott Pope, attorney on behalf of Atlas Carbon LLC (Pope, Jeffrey) (Entered: 03/31/2023) |
| 04/20/2023 | 44 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Order Referring Case to Mediation by Judicial Officer filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Proposed Order)(Pope, Jeffrey) (Entered: 04/20/2023) |
| 04/21/2023 | 45 | (TEXT–ONLY) NOTICE of Status Conference: BY TELEPHONE – All parties shall appear by telephone through the Court's conference call system. Guests call: 307–735–3644 Conference ID: 275 440 149#. Status Conference set for 4/26/2023 at 09:00 AM before Honorable Kelly H Rankin. (Court Staff, smxb) (Entered: 04/21/2023) |
| 04/21/2023 | 46 | MOTION REFERRED TO Judge Kelly H Rankin. Stipulated MOTION for Extension of Time (Non–Dispositive) requesting extension of Expert Disclosure Deadline of Defendant–Counterclaim Plaintiff filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Proposed Order)(Pope, Jeffrey) (Entered: 04/21/2023) |
| 04/24/2023 | 47 | ORDER by the Honorable Kelly H Rankin granting 46 Motion for Extension of Time. Expert Witness Designation–Defendant deadline 4/28/2023. (Court Staff, sjdl) (Entered: 04/24/2023) |
| 04/26/2023 | 48 | MINUTES for proceedings held before Honorable Kelly H Rankin: Parties discussed scheduling a Zoom mediation with the Court. Counsel will confer with their clients about the proposed dates and report back to the Court by the end of the day of 6/1/23, with a confirmed date. Magistrate Judge Status Conference held on 4/26/2023. (Court Staff, smxb) (Entered: 04/26/2023) |
| 04/27/2023 | 49 | Designation of Expert Witnesses by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Sharpe, Macrina) (Entered: 04/27/2023) |
| 05/01/2023 | 50 | ORDER for Mediation by the Honorable Kelly H Rankin. IT IS ORDERED that the parties appear before the Honorable Kelly H. Rankin, United States Magistrate Judge at 8:30 a.m. on June 15, 2023, for purposes of a ZOOM mediation.(Court Staff, smxb) (Entered: 05/01/2023) |
| 05/01/2023 | 51 | (TEXT–ONLY) NOTICE of Pre–Mediation Status Conference: BY TELEPHONE – All parties shall appear by telephone through the Court's conference call system. Guests call: 307–735–3644 Conference ID: 275 440 149#. Pre–Mediation Status Conference set for 6/13/2023 at 02:00 PM before Honorable Kelly H Rankin. (Court Staff, smxb) (Entered: 05/01/2023) |
| 05/01/2023 | 52 | (TEXT–ONLY) NOTICE of Mediation: VIA ZOOM – <br><br> NOTE: <br><br> 1. This proceeding will be held via Zoom Video/Web Conferencing with all |

| | | |
|---|---|---|
| | | participants appearing remotely; the Zoom ID and Passcode will be provided separately to the participants email address of record.<br><br>2. Participants should connect to the proceeding 15 minutes prior to its scheduled start time to allow for troubleshooting of any connectivity issues.<br><br>3. To ensure the record is of the best quality, participants are encouraged to utilize a headset to reduce static and background noise. If not using a headset, participants must ensure the audio feed at their location is muted when not speaking.<br><br>***REMINDER: Recording or broadcasting of this hearing is prohibited. ***<br><br>**Mediation set for 6/15/2023 at 08:30 AM before Honorable Kelly H Rankin.** (Court Staff, smxb) (Entered: 05/01/2023) |
| 05/26/2023 | 53 | STIPULATION *Regarding ADA Carbon Solutions (Red River), LLC's Deadline to Answer, Respond, and Serve Objections to Atlas Carbon, LLC's First Sets of Interrogatories and Requests for Production* by ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) (Entered: 05/26/2023) |
| 06/12/2023 | 54 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Deadlines filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Proposed Order)(Pope, Jeffrey) (Entered: 06/12/2023) |
| 06/14/2023 | 55 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting in part and denying in part 54 Motion for Extension of Time. Finding good cause, the following deadlines will apply: Motions filing deadline 6/26/2023. Motion response deadline 7/10/2023. Discovery due by 6/26/2023. Daubert Motion deadline 6/26/2023. Daubert Motions Response Deadline 7/10/2023. Additionally, either party may depose the opposing party's expert up to 14 days prior to the Final Pretrial Conference. (Court Staff, sjdl) (Entered: 06/14/2023) |
| 06/22/2023 | 56 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin. The Court held an informal discovery conference regarding the method of certain fact depositions. After hearing from both sides, the Court found good cause to grant Defendant's request to conduct the depositions by videoconference based on the circumstances of the case. Additionally, the Court permitted the parties to conduct the depositions on June 27, 2023, and June 28, 2023. (Court Staff, sjdl) (Entered: 06/22/2023) |
| 07/14/2023 | 57 | Notice Vacating Hearing: The dispositive motions hearing set for July 18, 2023, at 1:00 p.m. is hereby VACATED. (Court Staff, skb) (Entered: 07/14/2023) |
| 08/08/2023 | 58 | ~~MOTION REFERRED TO Judge Kelly H Rankin.~~ MOTION to Amend/Correct 35 Amended Complaint filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) Modified text on 8/8/2023 (Court Staff, semt). Modified on 8/10/2023 (Court Staff, skb). (Entered: 08/08/2023) |
| 08/08/2023 | 59 | MINUTES for proceedings held before Honorable Scott W Skavdahl: Final Pretrial Conference held on 8/8/2023. (Court Reporter Megan Strawn.) (Court Staff, semt) (Entered: 08/08/2023) |
| 08/08/2023 | 60 | (TEXT–ONLY) MINUTE ORDER by the Honorable Scott W Skavdahl.Plaintiff must file red–lined version of proposed second amended complaint by end of day August 9, 2023. Any response by Defendant to the pending motion to amend (ECF |

| | | |
|---|---|---|
| | | No. 58) shall be submitted on or before August 11, 2023. Plaintiff may submit a reply brief on or before August 14, 2023.Each party must disclose the names and citizenship of their respective members, pursuant to Fed. R. Civ. P. 7.1(a)(2), on or before August 14, 2023.After conferring regarding witnesses appearing remotely at trial, any remaining objections to a witnesss appearance by video conference must be submitted by August 14, 2023.(Court Staff, semt) (Entered: 08/08/2023) |
| 08/08/2023 | | Motions No Longer Referred: 58 MOTION to Amend/Correct 35 Amended Complaint, (Court Staff, semt) Modified text on 8/10/2023 (Court Staff, skb). (Entered: 08/08/2023) |
| 08/09/2023 | 61 | CORPORATE DISCLOSURE filed by Atlas Carbon LLC. (Pope, Jeffrey) Modified text on 8/10/2023 (Court Staff, skb). (Entered: 08/09/2023) |
| 08/10/2023 | 62 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Leave to File Memorandum of Law in Support of 58 Motion for Leave to File Second Amended Complaint and Associated Documents as Non–Public Documents filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) Modified to add link on 8/10/2023 (Court Staff, skb). (Entered: 08/10/2023) |
| 08/10/2023 | 63 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting 62 Motion for Order. Plaintiff may file the requested documents as non–public. (Court Staff, sjdl) (Entered: 08/10/2023) |
| 08/10/2023 | 64 | NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – MEMORANDUM in Support of 58 Motion to Amend/Correct, 63 Order on Motion for Order filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit Redline) (Shaffer, Maxwell) (Entered: 08/10/2023) |
| 08/10/2023 | 65 | MEMORANDUM in Support of 58 Motion to Amend/Correct, filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1 – Public, # 2 Exhibit 2 – Public, # 3 Exhibit 3 – Public, # 4 Exhibit 4 – Public, # 5 Exhibit 5 – Public, # 6 Exhibit 6 – Redacted Public, # 7 Exhibit 7 – Redacted Public, # 8 Exhibit 8 – Redacted Public, # 9 Exhibit Redline – Public) (Shaffer, Maxwell) (Entered: 08/10/2023) |
| 08/10/2023 | 66 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order for Leave to File Non–Public Documents filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Proposed Order)(Pope, Jeffrey) (Entered: 08/10/2023) |
| 08/11/2023 | 67 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting 66 Motion for Order. Defendant may file the requested documents as non–public. (Court Staff, sjgc) (Entered: 08/11/2023) |
| 08/11/2023 | 68 | ~~MOTION REFERRED TO Judge Kelly H Rankin.~~ MOTION for Protective Order *and Brief in Support* filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Proposed Order)(Pope, Jeffrey) Modified to unrefer motion on 8/14/2023 (Court Staff, skb). (Entered: 08/11/2023) |
| 08/11/2023 | 69 | NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – RESPONSE in Opposition re 58 MOTION to Amend/Correct |

| | | |
|---|---|---|
| | | 35 Amended Complaint filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L) (Pope, Jeffrey) (Entered: 08/11/2023) |
| 08/11/2023 | 70 | RESPONSE in Opposition re 58 MOTION to Amend/Correct 35 Amended Complaint filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Exhibit A – Redacted, # 2 Exhibit B – Redacted, # 3 Exhibit C – Redacted, # 4 Exhibit D – Redacted, # 5 Exhibit E – Redacted, # 6 Exhibit F – Redacted, # 7 Exhibit G – Redacted, # 8 Exhibit H – Redacted, # 9 Exhibit I – Redacted, # 10 Exhibit J – Redacted, # 11 Exhibit K – Redacted, # 12 Exhibit L) (Pope, Jeffrey) (Entered: 08/11/2023) |
| 08/14/2023 | | Motions No Longer Referred: 68 MOTION for Protective Order *and Brief in Support.* (Court Staff, skb) (Entered: 08/14/2023) |
| 08/14/2023 | 71 | (TEXT–ONLY) ORDER by the Honorable Scott W Skavdahl. Plaintiff shall file any response to Defendant's 68 Motion for Protective Order no later than 5:00 p.m. MDT on Wednesday, August 16, 2023. The Court will then accept no further briefing. (Court Staff, skb) (Entered: 08/14/2023) |
| 08/14/2023 | 72 | DISREGARD FILLED IN ERROR (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin. Plaintiff shall respond to Defendant's Motion for Protective Order on or before 8/17/2023. Any reply is due two business days thereafter. (Court Staff, sjdl) Modified on 8/14/2023 (Court Staff, sjdl). (Entered: 08/14/2023) |
| 08/14/2023 | 73 | Amended Exhibit List by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Pope, Jeffrey) (Entered: 08/14/2023) |
| 08/14/2023 | 74 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Order Leave to File Reply in Support of Motion for Leave to File Second Amended Complaint and Associated Documents as Non–Public Documents filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) (Entered: 08/14/2023) |
| 08/14/2023 | 75 | NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – REPLY to 58 Motion to Amend/Correct, filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1) (Shaffer, Maxwell) (Entered: 08/14/2023) |
| 08/15/2023 | 76 | REPLY to 58 Motion to Amend/Correct, filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1) (Shaffer, Maxwell) (Entered: 08/15/2023) |
| 08/15/2023 | 77 | DISCLOSURE for LLC or Partnership filed by ADA Carbon Solutions (Red River) LLC, identifying Corporate Parent ADA Carbon Solutions (Operations), LLC, Corporate Parent ADA Carbon Solutions, LLC, Corporate Parent Advanced Emissions Solutions, Inc. for ADA Carbon Solutions (Red River) LLC, ADA Carbon Solutions (Red River) LLC.. (Shaffer, Maxwell) (Entered: 08/15/2023) |
| 08/15/2023 | 78 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting 74 Motion for Order. Plaintiff may file its Reply as non–public. (Court Staff, sjdl) (Entered: 08/15/2023) |
| 08/16/2023 | 79 | |

| | | |
|---|---|---|
| | | RESPONSE in Opposition re 68 MOTION for Protective Order *and Brief in Support* filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Shaffer, Maxwell) (Entered: 08/16/2023) |
| 08/17/2023 | 80 | (TEXT−ONLY) NOTICE of Hearing on 68 MOTION for Protective Order *and Brief in Support* BY TELEPHONE. All parties may appear by telephone through the Courts conference call system. Guests call: 307−735−3644, Access code 925 745 005. **Motion Hearing set for 8/17/2023 03:45 PM before Honorable Scott W Skavdahl.** (Court Staff, semt) (Entered: 08/17/2023) |
| 08/17/2023 | 81 | ORDER by the Honorable Scott W Skavdahl denying 58 MOTION to Amend/Correct 35 Amended Complaint. Plaintiff's Motion to Amend (ECF No. 58 ) is DENIED. As to Defendant's request the Court award it fees for having to respond to Plaintiff's motion (ECF No. 69 at 10), that is also hereby absolutely DENIED. (Court Staff, skb) (Entered: 08/17/2023) |
| 08/17/2023 | 82 | Minute ORDER and Minute Entry. Proceedings held before Honorable Scott W Skavdahl: denying 68 Motion for Protective Order for reasons articulated on the record; Minute Entry: Oral Ruling on Motion held on 8/17/2023. (Court Reporter Megan Strawn.) (Court Staff, semt) (Entered: 08/17/2023) |
| 08/17/2023 | 83 | FINAL PRETRIAL ORDER by the Honorable Scott W Skavdahl. (Attachments: # 1 Appendix A, # 2 Appendix B)(Court Staff, semt) (Entered: 08/17/2023) |
| 08/18/2023 | 84 | NOTICE of Attorney Appearance by Isaac Nathan Sutphin on behalf of Atlas Carbon LLC (Sutphin, Isaac) (Entered: 08/18/2023) |
| 08/21/2023 | 85 | Referred to Magistrate Judge. MOTION to Continue (Dispositive). *Motion for Leave to Take Trial Preservation Deposition or, in the Alternative,* Requesting continuance of Trial filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Shaffer, Maxwell) Modified on 8/21/2023 with referral (Court Staff, semt). Modified motion type on 8/23/2023 (Court Staff, sjdl). (Entered: 08/21/2023) |
| 08/21/2023 | 86 | (TEXT−ONLY) NOTICE of Hearing on 85 MOTION to Continue (Dispositive). *Motion for Leave to Take Trial Preservation Deposition or, in the Alternative,* Requesting continuance of Trial BY TELEPHONE. All parties may appear by telephone through the Courts conference call system. Guests call: 307−735−3644, Access code 275440149#. **Motion Hearing set for 8/23/2023 04:00 PM before Honorable Kelly H Rankin.** (Court Staff, sjdl) (Entered: 08/21/2023) |
| 08/21/2023 | 87 | RESPONSE in Opposition re 85 MOTION to Continue (Dispositive). *Motion for Leave to Take Trial Preservation Deposition or, in the Alternative,* Requesting continuance of Trial filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Pope, Jeffrey) (Entered: 08/21/2023) |
| 08/23/2023 | 88 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Pope, Jeffrey) (Entered: 08/23/2023) |
| 08/23/2023 | 89 | MINUTES for proceedings held before Honorable Kelly H. Rankin: Telephonic Hearing on 85 MOTION for Leave to Take Trial Preservation Deposition or, in the Alternative, Requesting Continuance of Trial held on 8/23/2023. The Court denies |

| | | |
|---|---|---|
| | | the motion to continue and directs counsel to hold the in–person deposition of Mr. Velasquez prior to the start of trial on Monday, August 28, 2023. Please refer to the Court's forthcoming order for a complete ruling. (Court Reporter Jan Davis.) (Court Staff, szf) (Entered: 08/23/2023) |
| 08/23/2023 | 90 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting in part and denying in part 85 Motion for Order. The Court held a telephonic hearing to address Plaintiff's Motion to take a Trial Preservation Deposition of one of its witnesses. After reviewing the briefing and hearing argument from both parties, the Court determined there was good cause to allow an in person preservation deposition based on the need for the testimony. The Court did not find good cause to grant a continuance based on the Court's schedule, the timing of the request, and prejudice to the Defendant. The parties shall work to conduct the deposition at the earliest available time. For further findings of the Court see the official record. (Court Staff, sjdl) (Entered: 08/23/2023) |
| 08/24/2023 | 91 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Thomas D. Leland to appear pro hac vice; Check not tendered; filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 1, # 2 Proposed Order)(Shaffer, Maxwell) (Entered: 08/24/2023) |
| 08/24/2023 | 92 | ORDER by the Honorable Kelly H Rankin granting 91 MOTION for Thomas D. Leland to appear pro hac vice; Check not tendered; filed by ADA Carbon Solutions (Red River) LLC. Counsel notified via email.(Court Staff, semt) (Entered: 08/24/2023) |
| 08/25/2023 | 93 | Notice of Pro Hac Vice Attorney Appearance by Thomas Leland on behalf of ADA Carbon Solutions (Red River) LLC Filing fee $ 100, receipt number AWYDC–2303493. (Leland, Thomas) (Entered: 08/25/2023) |
| 08/28/2023 | 94 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) (Entered: 08/28/2023) |
| 08/28/2023 | 95 | MINUTES for proceedings held before Honorable Scott W Skavdahl: Bench Trial commenced to the Court on 8/28/2023. Parties provided their opening arguments. Plaintiffs called Dr. Joseph Wong and Amy Cooper. Exhibits identified and admitted. (Court Reporter Jan Davis.) (Court Staff, semt) (Entered: 08/28/2023) |
| 08/29/2023 | 96 | MINUTES for proceedings held before Honorable Scott W Skavdahl: Bench Trial continued on 8/29/2023. Plaintiffs called Reza Hashampour, Jim Harrington, Jeremy Cloud, and Jeffrey George. Video deposition of Oscar Velasquez shown in open court. Exhibits identified and admitted. (Court Reporter Jan Davis.) (Court Staff, semt) (Entered: 08/29/2023) |
| 08/29/2023 | | DEPOSITION of Reza Hashampour taken on 6/27/2023 (used during trial to refresh recollection) consisting of 297 pages. (Court Staff, semt) (Entered: 08/30/2023) |
| 08/29/2023 | | DEPOSITION of Jeffrey George used during trial to refresh recollection (108 pages). (Court Staff, semt) Original deposition transcript received 9/18/2023. Modified text with page count on 9/18/2023 (Court Staff, semt). (Entered: 08/30/2023) |
| 08/29/2023 | | DEPOSITION of Oscar Velasquez taken on 9/25/2023 consisting of 293 pages; Video Deposition played during the course of trial. (Court Staff, semt) (Entered: |

| | | |
|---|---|---|
| | | 08/30/2023) |
| 08/30/2023 | 97 | MINUTES for proceedings held before Honorable Scott W Skavdahl: Bench Trial completed on 8/30/2023. Plaintiff rests. Defendant called Nicholas Pierson, Reza Hashampour; Amy Cooper called by Zoom video. Exhibits identified and admitted. Defendant rests. Parties provided Closing Arguments. The Court took the matter under advisement. (Court Reporter Tiffany Fisher.) (Court Staff, semt) (Entered: 08/30/2023) |
| 08/30/2023 | | DEPOSITION of Nicholas Pierson taken on 8/1/2023 used for witness impeachment (96 pages). (Court Staff, semt) (Entered: 08/30/2023) |
| 08/30/2023 | 98 | ADMITTED EXHIBITS LIST. (Court Staff, semt) (Main Document 98 replaced with received stamped copy on 8/31/2023) (Court Staff, semt). (Main Document 98 replaced with file stamped copy on 9/6/2023) (Court Staff, semt). (Entered: 08/31/2023) |
| 11/22/2023 | 99 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Bench Trial Proceedings. Volume I of III held on 8/28/2023 before Judge Scott W. Skavdahl. To purchase a copy of this transcript, please contact Court Reporter Jan Davis, phone (307) 433–2154 or email jbd.davis@gmail.com. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. Notice of Intent to Redact due 11/29/2023. Notice of Redaction Request due 12/13/2023. Redacted Transcript Deadline set for 12/26/2023. Release of Transcript Restriction set for 2/20/2024. (Davis, Jan) (Entered: 11/22/2023) |
| 11/22/2023 | 100 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Bench Trial Proceedings. Volume II of III held on 8/29/2023 before Judge Scott W. Skavdahl. To purchase a copy of this transcript, please contact Court Reporter Jan Davis, phone (307) 433–2154 or email jbd.davis@gmail.com. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. Notice of Intent to Redact due 11/29/2023. Notice of Redaction Request due 12/13/2023. Redacted Transcript Deadline set for 12/26/2023. Release of Transcript Restriction set for 2/20/2024. (Davis, Jan) (Entered: 11/22/2023) |
| 11/24/2023 | 101 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Bench Trial Proceedings. Volume III of III, held on 8/30/2023 before Judge Scott W. Skavdahl. To purchase a copy of this transcript, please contact Court Reporter Tiffany Fisher, Tiffany_Fisher@id.uscourts.gov. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. Notice of Intent to Redact due 12/1/2023. Notice of Redaction Request due 12/15/2023. Redacted Transcript Deadline set for 12/26/2023. Release of Transcript Restriction set for 2/22/2024. (Davis, Jan) (Entered: 11/24/2023) |
| 01/18/2024 | 102 | NON–PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access – FINDINGS OF FACT AND CONCLUSIONS OF LAW by the Honorable Scott W Skavdahl. See pleading for details. (Court Staff, semt) (Entered: 01/18/2024) |
| 01/18/2024 | 103 | JUDGMENT in favor of Plaintiff ADA Carbon Solutions (Red River), LLC against Defendant Atlas Carbon, LLC by the Honorable Scott W Skavdahl.(Court Staff, semt)The AO133 Bill of Cost form is available at |

| | | |
|---|---|---|
| | | https://www.wyd.uscourts.gov/forms/bill–costs. (Entered: 01/18/2024) |
| 02/01/2024 | 104 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non–Dispositive) requesting extension of Deadline to Submit Bill of Costs filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Proposed Order)(Shaffer, Maxwell) (Entered: 02/01/2024) |
| 02/02/2024 | 105 | (TEXT–ONLY) ORDER by the Honorable Kelly H Rankin granting 104 Motion for Extension of Time. ADA shall have up to and including Monday, February 5, 2024, to file its Bill of Costs, AO form 133, and all associated documentation. (Court Staff, sjdl) (Entered: 02/02/2024) |
| 02/05/2024 | 106 | BILL OF COSTS filed by Plaintiff ADA Carbon Solutions (Red River) LLC, Counter Defendant ADA Carbon Solutions (Red River) LLC. (Attachments: # 1 Exhibit 0, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit G, # 8 Exhibit H) (Shaffer, Maxwell) (Main Document 106 flattened and replaced on 2/6/2024) (Court Staff, semt). (Entered: 02/06/2024) |
| 02/09/2024 | 107 | OBJECTION to 106 Bill of Costs, filed by Counter Claimant Atlas Carbon LLC, Defendant Atlas Carbon LLC. (Pope, Jeffrey) (Entered: 02/09/2024) |
| 02/20/2024 | 108 | NOTICE OF APPEAL as to 103 Judgment, 102 Findings of Fact & Conclusions of Law filed by Plaintiff ADA Carbon Solutions (Red River) LLC. (Shaffer, Maxwell) (Entered: 02/20/2024) |
| 02/20/2024 | | PAYMENT ENTRY: Appeal fee paid $ 605, receipt number AWYDC–2389338 re 108 Notice of Appeal (Attorney). (Shaffer, Maxwell) (Entered: 02/20/2024) |

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2024 JAN 18 AM 10: 44

MARGARET BOTKINS, CLERK
CASPER

———————————

ADA CARBON SOLUTIONS (RED
RIVER), LLC, a Delaware Limited Liability
Company,

Plaintiff,

v.

ATLAS CARBON, LLC, a Wyoming
Limited Liability Company,

Defendant.

Case No. 22-CV-161-SWS

**NON-PUBLIC DOCUMENT**

———————————————

## BENCH TRIAL MEMORANDUM DECISION AND ORDER

———————————————

This matter was tried to the Court over the course of three days. (ECF 95-97.) Having heard the testimony presented, examined the admitted exhibits, considered the arguments of counsel, and reviewed the record herein, the Court sets forth its findings of fact and conclusions of law consistent with Fed. R. Civ. P. 52(a).

## BENCH TRIAL STANDARD OF ANALYSIS

When acting as the trier-of-fact, the trial court must determine which of the witnesses it finds credible, which of the permissible competing inferences it will draw, and whether the party having the burden of proof has satisfactorily proven its case. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 215 (2d Cir. 2001). When material evidentiary conflicts arise, the trial court must resolve such conflicts by considering the respective interests of the parties, the demeanor of witnesses, and the extent to which testimony is corroborated. 89 C.J.S. Trial § 1212 (June

2020 update). The Court's findings of fact should sufficiently indicate the factual basis for its conclusion, identify the legal standards against which the evidence was measured, and be broad enough to cover all material issues. *Otero v. Mesa Cnty. Valley Sch. Dist.*, 568 F.2d 1312, 1316 (10th Cir. 1977).

## FACTUAL FINDINGS

In appraising credibility, no witness struck the Court as particularly non-credible or unworthy of belief. All-in-all, there was little disagreement from the witnesses about what happened. The primary dispute in this case concerns the parties' differing interpretations of what their contract allowed and required each to do.

Plaintiff ADA Carbon Solutions and Defendant Atlas Carbon are both in the business of providing "activated carbon" to their customers. (Am. Compl. ¶¶ 18, 21.[1]) Activated carbon is a powdered or granular carbon subjected to a thermal or chemical process to greatly increase its surface area. (*Id.* ¶ 19.) Through its increased surface area, activated carbon is highly adsorbent (able to capture contaminants on the surface), and it is commonly used to filter water and air. (*Id.*; Trial Tr. Vol. I 44:1-4.)

Plaintiff ADA is headquartered in Denver, Colorado (Trial Tr. Vol. I 12:23), but it produces activated carbon at its plant in Amistad, Louisiana (Trial. Tr. Vol. II 316:2-317:2). Defendant Atlas produces activated carbon sourced from Power River Basin coal at its plant near Gillette, Wyoming. (Trial Tr. Vol. I 12:23-13:3.) Defendant Atlas employs an engineering firm, Wood PLC, to operate its activated carbon plant. (*Id.* 100:6-101:7; Trial Tr. Vol. II 268:16-21.)

---

[1] ECF 35.

WYD 16

Plaintiff ADA and Defendant Atlas are competitors in the world of activated carbon production and sales. Nonetheless, these two sophisticated businesses entered into two prior one-time deals to supply each other with activated carbon. In mid-2020, Defendant Atlas could not produce enough activated carbon to meet a certain customer's demand surge, so it reached out to Plaintiff ADA, which supplied about 1.2 million pounds of activated carbon to Defendant Atlas to help cover the deficit. (Trial Tr. Vol. I 106:12-107:12.) About a year later, in mid-2021, the roles reversed, with Defendant Atlas supplying about 400,000 pounds of activated carbon to Plaintiff ADA to help it cover its own deficit. (*Id.* 107:21-108:9.) Following those two successful endeavors, Defendant Atlas proposed the parties enter into an ongoing partnership where it would sell Plaintiff ADA a large amount of activated carbon over several years at fixed prices. (*Id.* 108:10-21.) Plaintiff ADA produces its own activated carbon but also purchases additional activated carbon from multiple suppliers that it resells to its customers.

### 1. The parties execute a sales agreement.

After some negotiations and at least one in-person meeting involving various party representatives at Defendant Atlas' production plant near Gillette, the parties entered into the "Sales Agreement For Products" now at the core of this lawsuit, whereby Plaintiff ADA agreed to purchase a large volume of activated carbon from Defendant Atlas over an extended window of time. (Ex. 2.) In the parties' October 2021 contract, Defendant Atlas agreed to sell to Plaintiff ADA "activated carbon produced from Powers River Basin coal and made by Atlas to a specification as per Schedule A (the 'PRODUCT') in accordance with the terms and conditions of this Agreement." (Ex. 2 p. 1.) Section 1 of the contract required Defendant

Atlas to provide the following quantities of activated carbon at certain fixed prices according to four different time periods:

## PRODUCT Maximum Annual Volumes

    a.    Trial Period (1 Nov 2021 - 31 May 2022) = **2.56 Million lbs.** During the Trial Period ADA will purchase Non-brominated PRODUCT only up until ATLAS provides notification to ADA that shipments of brominated PRODUCT are available.

    b.    Contract Year 1 (1 Jun 2022 - 31 May 2023) = **5 Million lbs. ("Year 1 Annual Quantity")**

    c.    Contract Year 2 (1 Jun 2023 - 31 May 2024) = **80% - 110% of Contract Year 1 ("Year 2 Annual Quantity")**
        …

    d.    Contract Year 3 (1 Jun 2024 - 31 May 2025) = **80% - 110% of Contract Year 2 ("Year 3 Annual Quantity")**
        …

(Ex. 2 p. 1 (bold and capitalizations in original).) The contract also noted, "The PRODUCT volumes contained herein shall be deemed Annual Quantities (as defined herein) for the then current Contract Year." (*Id.*) The contract further explained the transition from the Trial Period into the Contract Years:

> Upon completion of the Trial Period, the Contract will transition to a 3-year commercial Agreement as provided in Section 1(a)-(d). For the avoidance of doubt, the dates included above are anticipated by the Parties, but the Trial Period will continue, and Contract Year 1 will not begin, until ADA has accepted 2.56 Million lbs. of conforming Products from Atlas.

(*Id.* pp. 1-2.)

Schedule A, attached to the contract, set forth several specifications that Defendant Atlas' activated carbon was supposed to meet. (*See* Ex. 2 p. 9.) And the contract addressed the product specifications several times:

    1.  **ITEMS PURCHASED.** ATLAS agrees to sell, and ADA agrees to purchase activated carbon produced from Powder River Basin coal and made by Atlas to a specification as per Schedule A (the "PRODUCT") ….

WYD 18

8. **WARRANTIES.** ATLAS warrants to ADA that the PRODUCTS will (i) conform to those specifications contained in Schedule A ….

9. **ACTIVATED CARBON PRODUCT SPECIFICATIONS:** Activated carbon Products produced by ATLAS must meet the specifications in Schedule A for the applicable Contract Year [of] the Agreement. Any PRODUCT that does not conform to the applicable specifications may be rejected by ADA ….

(Ex. 2 pp. 1, 3.) Relevant to this dispute, the most significant specifications were (1) maximum particle size, (2) minimum iodine number, and (3) maximum percentage of included volatile matter by weight. (*Id.* p. 10; Trial Tr. Vol. I 67:19-68:2; Ex. 32 pp. 2-3.)

Schedule B, also attached to the contract, set forth the price per pound of activated carbon to be supplied by Defendant Atlas under the contract. (Ex. 2 p. 10.)

## 2. Defendant Atlas' ability to meet the contract specifications is a continuing concern.

Defendant Atlas began supplying activated carbon to Plaintiff ADA under the contract in December 2021 (Ex. 24 p. 3), and it supplied one or two trailer loads to Plaintiff ADA most weeks over the next several months, except for a time when its plant was shut down for upgrades (Ex. 48 p. 2; *see* Ex. 24 p. 4; Trial Tr. Vol. II 319:2-320:6). Each trailer load carried about 40,000 pounds of product. (Trial Tr. Vol. I 157:22-24.)

During the first six months or so of Defendant Atlas supplying activated carbon to Plaintiff ADA under the contract, it is undisputed that the activated carbon did not meet all the specifications in Schedule A of the contract. During this time, the parties understood Defendant Atlas was working to meet those specifications during the Trial Period of the agreement. For example:

WYD 19

- Ex. 24 p. 3 - March 2, 2022 Memo from Plaintiff ADA to Defendant Atlas stating: "Our teams have been engaged in ongoing discussions regarding QA/QC and we are encouraged by this ongoing dialogue. Below please find the product specifications achieved to date."

- Ex. 32 p. 2 - June 22, 2022 letter from Defendant Atlas to Plaintiff ADA stating: "When we began negotiating the agreement between us in September 2021, I noted that it is our intent to fully comply with the specifications you are requesting, but we were not immediately capable of 100% compliance. We view the 2.56M lb 'trial period' as an opportunity to demonstrate improved performance and ultimately full compliance.... In the intervening period, Atlas has undertaken process and equipment improvements that we believe will have a positive impact on our product quality. That improvement is already visible in our IODINE values ...."

- Ex. 34 p. 1 – June 24, 2022 email from Plaintiff ADA to Defendant Atlas stating: "We remain encouraged by the progress to date on the improvements in iodine values and remain optimistic that Atlas is close to achieving consistent iodine quality[.]"

As those first six months passed, and with upgrades and changes to Defendant Atlas' plant in Wyoming, Defendant Atlas eventually delivered activated carbon that satisfied the contract specifications as to particle size and iodine number. (Trial Tr. Vol. I 78:15-19.) However, none of the activated carbon delivered by Defendant Atlas ever satisfied the contract's maximum volatile matter specification. (*Id.* 80:4-7.) The contract specifications required Defendant Atlas' activated carbon to include no more than 8% volatile compounds measured by weight. (Ex. 2 p. 9.) Volatiles are compounds, usually hydrocarbons, that occupy space within the carbon but do not contribute to its adsorption capabilibility and can increase the danger of the product's explosivity when in storage. (Trial Tr. Vol. I 51:7-52:2.) Most of the activated carbon produced by Defendant Atlas contains 10 to 13% volatile matter by weight. (Trial Tr. Vol. III 421:9-14.)

Defendant Atlas asserts it has never been possible to produce activated carbon at its

WYD 20

Gillette plant that meets all specifications of the contract. (Trial Tr. Vol. II 201:9-14.) As previously noted, Plaintiff ADA had the right to reject any non-conforming product under the contract. (Ex. 2 p. 3.) However, Plaintiff ADA accepted every load of activated carbon from Defendant Atlas and blended the product with some of its other activated carbon to improve its properties so that the final product could meet the specifications of Plaintiff ADA's customers. (Trial Tr. Vol. I 68:3-24.) For example, Plaintiff ADA blended Defendant Atlas' activated carbon with other lower-volatile carbons to meet its customers' requirements. (*Id.* 68:15-24.) Plaintiff ADA usually had to blend one trailer load of Defendant Atlas' activated carbon with three trailer loads of other activated carbon to meet specifications. (Trial Tr. Vol. II 324:7-10.) Plaintiff ADA had not anticipated needing to blend the material and doing so increased Plaintiff ADA's costs. (Trial Tr. Vol. I 96:3-9.) Nonetheless, while Defendant Atlas' activated carbon did not meet all contract specifications, it was close enough that Plaintiff ADA was able to make it work and put it to use. (Trial Tr. Vol. II 328:8-11.) And Plaintiff ADA was profiting from buying and reselling Defendant Atlas' product, despite the need to blend it.

3.     **Defendant Atlas begins requesting a price increase beyond the prices set forth in the contract.**

On April 26, 2022, and despite the parties having executed a fixed-price contract six months earlier that was intended to cover a multi-year period, Defendant Atlas began advising Plaintiff ADA that Plaintiff ADA needed to start paying more for the activated carbon. (Ex. 36 p. 1 (June 30, 2022 email from Defendant Atlas to Plaintiff ADA stating: "Atlas has been advising ADA of the need for a price increase since 26 April 2022.").) Plaintiff ADA resisted any price increase. (*See, e.g.,* Ex. 30 p. 3 (June 6, 2022 letter from Plaintiff ADA to Defendant

Atlas stating: "ADA is not interested in amending our contract to include a quarterly price adjustment.").) Over the next two months, Defendant Atlas continued to push Plaintiff ADA to increase the price it was paying Defendant Atlas for the activated carbon, advising Plaintiff ADA of the "need" to increase the price no less than 10 times between April 26, 2022, and June 30, 2022. (Ex. 36 p. 1 (June 30, 2022 email from Defendant Atlas to Plaintiff ADA stating: "*Price change is necessary for us to continue supplying ADA*. Atlas has communicated that message consistently and with increasing urgency on April 26, May 3, June 2, June 7, June 8, June 15, June 22, June 24, and again on Jun 28.") (emphasis in original).) Defendant Atlas made these requests for a price increase beyond those stated in the contract because its own costs for producing activated carbon (and those of every other manufacturer) had increased substantially at the end of 2021 and into 2022, causing Defendant Atlas to sell activated carbon to Plaintiff ADA under the contract at a loss. (Trial Tr. Vol. I 119:3-22.) Plaintiff ADA continued to resist all requests to increase the prices beyond those set forth in the contract. (*See* Ex. 36 p. 3 (June 24, 2022 email from Plaintiff ADA to Defendant Atlas stating: "**ADA has not to date accepted any proposed pricing changes**.") (emphasis in original).) On June 24, 2022, though, Plaintiff ADA suggested it would be open to a potential price amendment upon Defendant Atlas demonstrating it could consistently meet the product specifications set out in the contract. (*Id.*) On June 30, 2022, Defendant Atlas responded, "The need for price change is unrelated to product quality and is independent of any discussion about product specifications or targeted quality objectives." (*Id.* p. 1.) Defendant Atlas then concluded by saying, "I understand that ADA would like to defer conversation [about pricing] until receipt and analysis samples from new samples which are forthcoming. I will reconnect

WYD 22

with you in 2 weeks to schedule a date for our next conversation." (*Id.*)

Also near the end of June 2022, Plaintiff ADA learned that Defendant Atlas had canceled two truckloads that had been scheduled for June. (Ex. 53 p. 2.) Upon inquiring about the canceled loads, Defendant Atlas determined the loads were only delayed and would be made up in July. (*Id.* p. 1.) Defendant Atlas informed Plaintiff ADA that it had seven truckloads scheduled for July 2022 and it would be adding two more (with input from Plaintiff ADA) to make up for the two missing June truckloads. (Ex. 54 p. 1.)

**4.      Defendant Atlas issues a force majeure notice and discontinues supplying product to Plaintiff ADA.**

Rather than delivering the loads scheduled for July (including the two to be made up) or reconnecting about pricing after a couple of weeks, though, Defendant Atlas did none of that. Instead, on July 5, 2022, Defendant Atlas served Plaintiff ADA with a force majeure notice, asserting certain events "preclude Atlas from completing the delivery of the Trial Period activated carbon as described in the contract." (Ex. 37.) Defendant Atlas' force majeure notice continued:

> The Force Majeure events, which were reasonably unforeseen events when the contract was signed in 2021, make the delivery of the Trial Period activated carbon economically and/or financially impractical. These Force Majeure events include war, pandemic and acts of civil authorities which has resulted in an unprecedented increase in all costs, supply chain issues and restrictions on critical inputs needed by Atlas to perform under the terms of this contract.

(*Id.*) With that, Defendant Atlas stopped supplying activated carbon to Plaintiff ADA under the contract. Plaintiff ADA's subsequent requests for assurances from Defendant Atlas that it would continue or resume its contractual performance were rebuffed.

**5.      Plaintiff ADA files suit, and Defendant Atlas responds by asserting it will perform in conformity with the contract, but it doesn't.**

Plaintiff ADA then filed this lawsuit at the end of July 2022 and immediately moved for a preliminary injunction. (ECF 1, 4.) In response to the motion, Defendant Atlas, through counsel, "communicated its willingness to resume performance under the Agreement's Trial Period terms during this litigation." (ECF 15 pp. 1-2 (footnote omitted); *see also* ECF 15-1 ¶ 12 (Decl. of Reza Hashampour, CEO for Defendant Atlas, stating: "Atlas evaluated the Agreement and other business considerations and has elected to perform pursuant to the Agreement's Trial Period terms.").) Understanding Defendant Atlas was withdrawing its force majeure suspension, Plaintiff ADA withdrew its motion for preliminary injunction on August 17, 2022 (ECF 18), but this litigation continued.

On September 1, 2022, Plaintiff ADA placed an order via email to pick up activated carbon from Defendant Atlas on September 16 and September 19.[2] (ECF 42 p. 3.) Defendant Atlas' response is nothing short of doublespeak, effectively refusing to fill this September 2022 order while claiming it was accepted:

> Thank you for your order. Atlas cannot accept your order as written. Atlas will ship you activated carbon but the earliest it can do so is in November. Prior order commitments have accounted for existing and planned inventory until then. As such, Atlas also cannot commit to the requested amount of product in your order letter at this time. When Atlas has available inventory in November, I will be able to tell you how much product we can ship at that time. But to be clear, Atlas accepts an order from ADA with details to be arranged later.

(*Id.* pp. 2-3.) On September 20, 2022, Plaintiff ADA attempted to place another order to pick up activated carbon from Defendant Atlas on October 4 and October 6. (*Id.* p. 2.) Defendant

---

[2] The contract required Plaintiff ADA to place an order at least 14 days before it would be picked up, and it required Defendant Atlas to accept an order within one business day of it being placed. (Ex. 2 p. 2.)

WYD 24

Atlas responded with more doublespeak, again "accepting" this order for October 2022 while refusing to fill it:

> As I indicated in my last email, inventory will not be available until November. So, your order dates are not available.
>
> I also asked to touch base around mid-October, and I ask you to do that again. With that said, Atlas will accept an order placed at that time. The amounts available for shipping will be determined once we touch base again.

(*Id.* p. 1.) Plaintiff ADA responded: "I'll be reaching back out mid-October to discuss scheduling 2-4 loads for the first couple of weeks in November. In the meantime, we'll work on procuring alternative product as we've been doing. Look forward to getting some loads going again." (*Id.*)

Plaintiff ADA failed to recontact Defendant Atlas in mid-October 2022 and instead placed an order on November 3, 2022:

> Consistent with our past practice, ADA is ordering an additional two loads of activated carbon to be picked up on November 15, 2022 and November 17, 2022 at your facility in Gillette, Wyoming. Please confirm within one business day, that Atlas accepts this order and that the two loads of activated carbon will be ready and available for pickup by ADA's carrier on those dates.

(Ex. 48 p. 3.) Defendant Atlas "accepted" the order while delaying one load by a month and the other load by two months:

> I received your email about ADA's order. As I have mentioned before, Atlas will adhere to the terms of the trial period as set out in our agreement, which is consistent with Atlas' past practice. Although it appears we may disagree on the trial period terms, Atlas will accept an order from ADA for 1 trailer on 15 Dec 2022 and 1 trailer on 12 Jan 2023. These amounts and shipping dates represent Atlas' available quantity for ADA at this time.

(*Id.*) Plaintiff ADA responded that it was disappointed that Defendant Atlas would not have any inventory available in November. (*Id.* p. 2.) Plaintiff ADA also said it would plan to pick

WYD 25

up the December and January loads referenced by Defendant Atlas and closed by saying,

"Please let me know if Atlas would like an additional email to confirm the December 2022

and January 2023 pickups." (*Id.*) Defendant Atlas responded in part:

> As indicated in previous emails, we are selling inventory quickly in 2022 and could not promise to give you already sold inventory. To be clear, Atlas has never rejected an ADA order. We have simply explained the fulfillment date would be different than what you asked for because of inventory availability.... You referenced prior practice for handling orders. Over the past year, our processes have evolved to manage inventory availability. We require a firm order with associated PO [purchase order] to include a request in our production plan.

> Your email indicates that you plan to pickup 2 truckloads at the times indicated in my earlier email (1 trailer on 15 Dec 2022 and 1 trailer on 12 Jan 2023). *Please confirm that ADA will order these amounts and that we should use the existing PO ACS010070 for invoicing.* Once I have that response, I will place these 2 orders in our production queue.

> ... I will also note that per prior communications from ADA, all parties recognize that the product has been and will continue to be non-conforming per the quality requirements outlined in our company's supply agreement....

> Of course, ADA will determine whether or not to place an individual order. Atlas has not rejected any orders, we have simply communicated our ability or inability to fill them on the requested dates.

(Ex. 48 p. 1 (emphasis in original).) Plaintiff ADA did not respond to Defendant Atlas after

that (Trial Tr. Vol. I 152:10-18), which includes having not confirmed that Defendant Atlas

was to use the existing purchase order number for invoicing (Trial Tr. Vol. II 347:16-19). The

evidence establishes this was the end of the parties' communications and interactions with

each other. (Trial Tr. Vol. II 347:20-23.) Thus, after declaring the force majeure suspension

in July 2022, and even after withdrawing it in August 2023, Defendant Atlas supplied no

activated carbon to Plaintiff ADA.

    The parties agree that as of trial in August 2023, Defendant Atlas had not delivered

WYD 26

2.56 million pounds of activated carbon to Plaintiff ADA in conformity with the Trial Period. Indeed, Defendant Atlas had provided approximately 1.4 million pounds of activated carbon to Plaintiff ADA under the contract (Trial. Tr. Vol. I 157:17-21), with none having been delivered since June 2022 (*id.* 144:24-145:5). Based in part on the contract, Plaintiff ADA had budgeted in 2022 to receive approximately 4.5 million pounds of activated carbon from Defendant Atlas, but it only received 1.3 million pounds that year from Defendant Atlas, including none after the force majeure notice of July 5, 2022. (Trial Tr. Vol. II 342:2-343:17.) Plaintiff ADA acquired additional amounts of activated carbon from two other suppliers in 2022 as cover product to make up for the shortfalls occurring after the force majeure notice from Defendant Atlas. (*Id.* 342:2-20.)

Plaintiff ADA sued Defendant Atlas over its alleged non-performance, asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and requesting either contract damages or specific performance. (Am. Compl. ¶¶ 115-147.) Defendant Atlas answered and denied Plaintiff ADA's allegations (ECF 36), and Defendant Atlas asserted counterclaims for declaratory judgment and breach of the covenant of good faith and fair dealing in its answer to the original complaint (ECF 17).

## STIPULATED FACTS

Plaintiff ADA and Defendant Atlas submitted the following facts as uncontroverted for the Final Pretrial Order:

(1) During 2021, ADA and Atlas negotiated a Sales Agreement for Products, which would govern the purchase by ADA and sale by Atlas of activated carbon products.

(2) Before the parties executed the Sales Agreement for Products, Atlas provided ADA with activated carbon samples produced at Atlas's Gillette, Wyoming

WYD 27

plant for the purposes of testing.

(3)     On October 27, 2021, the parties executed the Sales Agreement for Products, and made it effective as of November 1, 202[1].

(4)     The Sales Agreement for Products contains a Trial Period that runs until "ADA has accepted 2.56 Million lbs. of conforming Products from Atlas."

(5)     Atlas has not yet delivered the full 2.56 million pounds of activated carbon for the Trial Period.

(6)     None of the product Atlas has delivered to ADA conforms with all specifications set out in Schedule A of the Sales Agreement for Products.

(7)     Representatives of the parties and Wood PLC met on multiple occasions in 2022 to discuss product quality and efforts to meet the specifications set out in Schedule A of the Sales Agreement for Products.

(8)     On June 2, 2022, Atlas sent ADA a formal request to change the pricing in the Sales Agreement for Products.

(9)     ADA declined to agree to an adjustment of the pricing structure set out in Schedule A of the Sales Agreement for Products.

(10)    On July 5, 2022, Atlas sent ADA a letter invoking the force majeure clause in the Sales Agreement for Products, which notified ADA that Atlas was suspending deliveries for the Trial Period of the Sales Agreement for Products.

(11)    On August 12, 2022, through the declaration of its CEO, Atlas announced that it had elected to perform pursuant to the Sales Agreement for Products' Trial Period terms.

(ECF 83 pp. 2-3.)

## CONCLUSIONS OF LAW

With this factual background in place, the Court will now turn to the legal questions. In accordance with the contract's choice-of-law provision, the Court applies "the laws of the State of Wyoming without reference to its conflicts of law principles." (Ex. 2 p. 6.)

## 1.    Plaintiff ADA's Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

WYD 28

Plaintiff ADA's breach-of-contract action centers on Defendant Atlas' discontinued performance. (Am. Compl. ¶¶ 115-122.)  Its claim of bad faith similarly focuses on "Atlas' conduct in discontinuing performance without justification," which Plaintiff ADA contends eliminated its "ability to receive the benefit it bargained for in entering the Agreement." (*Id.* ¶ 126.)  Understanding that these two claims are not mutually dependent as a party may be liable on one and not the other, *Skyco Resources, LLP v. Family Tree Corp.*, 512 P.3d 11, 25 (Wyo. 2022), the Court will still examine them together due to their similarities and for judicial efficiency.

To prove a breach of contract, Plaintiff ADA must show

a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages.… This is often stated, as the court here instructed, as failure without legal excuse to perform any promise which forms the whole or part of a contract.

*Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979) (citations omitted).  The Wyoming Supreme Court has described the good-faith-and-fair-dealing duty as follows:

The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement.  Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party.  A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance.  The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties.  The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties.  In other words, the concept of good faith and fair dealing is not a limitless one.  The implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties.  In the absence of evidence of self-dealing or breach of community standards of decency,

WYD 29

fairness or reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant.

*Skyco Resources*, 512 P.3d at 24-25.

### 1.1    Defendant Atlas' suspension of its contractual performance under the force majeure provision did not breach the contract or demonstrate bad faith.

Defendant Atlas stopped supplying activated carbon to Plaintiff ADA with the force

majeure notice. The obvious place to start, then, is by examining whether the contract allowed

Defendant Atlas to suspend its contractual obligations under the facts of this case, which

requires the Court to construe the force majeure provision.

> Wyoming courts interpret contracts to effectuate the plain language contained therein. When interpreting a contract, courts avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless. Unless a contract's language is unclear or ambiguous, courts interpret and construct contracts as a matter of law. Ambiguous language is that language marred by obscurity, indefiniteness of expression, or the presence of a double meaning.

*Sinclair Wyoming Refinery Co. v. A&B Builders, Ltd.*, No. 15-CV-91-ABJ, 2019 WL 13177806, at

*3 (D. Wyo. June 11, 2019) (internal citations and quotations omitted), *aff'd Sinclair Wyoming*

*Refinery Co. v. A & B Builders, Ltd.*, 989 F.3d 747 (10th Cir. 2021). The Court will discuss

several provisions of the contract in some depth below, but the Court here notes that it does

not find any relevant provision of the parties' contract to be ambiguous, obscure, or indefinite.

The Court concludes the contract provisions considered herein are sufficiently clear to set

forth and effectuate the parties' intentions.

The force majeure provision in the contract (Section 12) provided in relevant part:

**FORCE MAJEURE.** If performance of this Agreement or any obligation under this Agreement is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party

unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event.

(Ex. 2 p. 4.)  The provision went on to define "force majeure" as follows:

The term Force Majeure shall include, without limitation, acts of God, plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, changes in laws or regulations that make performance impossible or economically or financially impractical or supplier failures that are not reasonably foreseeable to the extent such events actually affect performance.

(*Id.* pp. 4-5.)

At trial, Defendant Atlas asserted this force majeure provision was somewhat unique because it included a pure economic-based reason for declaring force majeure suspension. (Trial Tr. Vol. I 32:10-13.)  That is, this contract allowed performance to be suspended under the force majeure provision due to an event making performance "economically or financially impractical."  The Court agrees.  Indeed, its own research reveals no other case where force majeure was defined to include economic or financial impracticability, likely because force majeure provisions are generally written to avoid this possibility.  *See Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330 (4th Cir. 1987) ("A *force majeure* clause is not intended to buffer a party against the normal risks of a contract.  The normal risk of a fixed price contract is that the market price will change.") (quoting *Northern Indiana Public Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 275 (7th Cir. 1986)).  However, these parties are sophisticated businesses with experience in the activated carbon market, and this is the contract they negotiated and chose to enter.

To be sure, economic or financial impracticability is not, by itself, a force majeure event, just as a pandemic, by itself, would not be a force majeure event. Instead, the telltale ingredients for a force majeure event are the party's lack of control over the event, its reasonably unforeseen nature, and the preclusive effect the event has on a party's performance. *See Black's Law Dictionary* (11th ed. 2019) (defining "force majeure" as "an event or effect that can be neither anticipated nor controlled; esp., an unexpected event that prevents someone from doing or completing something that he or she had agreed or officially planned to do"). The requirements that a triggering force majeure event be outside of a party's control and reasonably unforeseen are already adequately captured by the language of the force majeure provision. However, to capture the requirement that the event actually interfere with contractual performance, the Court concludes the contract's definition of force majeure must be interpreted to apply the phrase "that make performance impossible or economically or financially impractical" to each item in the list that precedes it (and not only to "changes in laws"). Accordingly, the most reasonable interpretation of the force majeure definition's list of qualifying events effectively reads:

> The term Force Majeure shall include, without limitation,
>
> - acts of God, plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine or other employee restrictions … that make performance impossible or economically or financially impractical,
>
> - fire, explosion, vandalism, storm or other similar occurrence … that make performance impossible or economically or financially impractical,
>
> - orders or acts of military or civil authority, or by national emergencies … that make performance impossible or economically or financially impractical,

WYD 32

- insurrections, riots, or wars … that make performance impossible or economically or financially impractical,

- changes in laws that make performance impossible or economically or financially impractical,

- or supplier failures that are not reasonably foreseeable to the extent such events actually affect performance.

The Court finds it necessary to construe the force majeure definition in this manner to avoid rendering any part of the provision meaningless and to effectuate the parties' intentions. *See Simek v. Rocky Mountain, Inc.*, 977 P.2d 687, 690 (Wyo. 1999) (the court must construe contract as a whole while avoiding any construction that renders a provision meaningless and reconcile by reasonable interpretation any apparent conflict before adopting a construction which would nullify any provision) (citations omitted). Specifically, if the phrase "that make performance impossible or economically or financially impractical" (which is unusual in a force majeure provision but which these parties chose to include in their contract) did not apply to every item in the list preceding it, it would arguably allow a party to declare a force majeure suspension based on an event that did not actually affect that party's contractual performance in any way. For example, a party could otherwise declare a force majeure suspension of performance merely because an epidemic existed somewhere, regardless of whether that epidemic affected contractual performance. In interpreting the force majeure provision in this manner, the Court finds the provision to be clear and unambiguous; therefore, it does not resort to consulting parol evidence on the question. *See Ultra Resources, Inc. v. Hartman*, 226 P.3d 889, 905 (Wyo. 2010) ("Parol evidence of the parties' intent regarding what particular terms in their agreement mean is considered only when the contract is ambiguous.").

WYD 33

Examining the force majeure notice issued by Defendant Atlas shows it conforms to the parties' force majeure provision. In relevant part, it says:

> The Force Majeure events, which were reasonably unforeseen events when the contract was signed in 2021, make the delivery of the Trial Period activated carbon economically and/or financially impractical. These Force Majeure events include war, pandemic and acts of civil authorities which has resulted in an unprecedented increase in all costs, supply chain issues and restrictions on critical inputs needed by Atlas to perform under the terms of this contract. All of these unreasonably [sic] unforeseen events make performance economically and/or financially impractical due to the tremendous and sudden price increases and/or shortages of labor, fuel, raw materials and utilities needed to manufacture the AC.

(Ex. 37.) To be sure, the COVID-19 pandemic had begun and was well known before the parties executed their contract in October 2021, but Russia's invasion of Ukraine occurred in February 2022. Beyond these events by themselves, though, more relevant to this force majeure suspension was the effect these events had on Defendant Atlas' ability and cost to manufacture activated carbon and supply it to Plaintiff ADA under the contract. (*See, e.g.,* Trial Tr. Vol. I 131:17-132:2, 138:25-139:10 (Defendant Atlas' VP of Sales describing how the lockdowns in China due to the pandemic, the Ukraine war, and the imports by vessel that sat off the U.S. coast for months waiting to be unloaded all contributed to the sharp increase in inflation experienced by most of the world); 132:4-21 (describing the increase in cost for coal and diesel fuel because the U.S. was importing much less natural gas (due to the war in Ukraine)); 133:6-21 (describing the increase in price for activated carbon in 2022 because the U.S. is a net importer, but imports of many products were stunted due to supply-chain problems); Trial Tr. Vol. II 233:15-25 (Defendant Atlas' CEO describing the increase in the cost of fuel, electricity, and natural gas that increased Defendant Atlas' cost of manufacturing activated carbon); 251:3-12 (testifying that it was costing Defendant Atlas more to produce

the activated carbon than what Plaintiff ADA was paying under the contract).) The increase in inflation and manufacturing costs caused by the conglomeration of these issues was real, and it has never been disputed by Plaintiff ADA. The evidence and testimony presented at trial support Defendant Atlas' assertion that wars, the pandemic, and acts of civil authorities (such as factory shutdowns by the Chinese government), which were events outside of Defendant Atlas' control, combined to "make performance impossible or economically or financially impractical."

Additionally, that these events made Defendant Atlas' performance under the contract "economically or financially impractical" was reasonably unforeseeable. As the VP of Sales for Defendant Atlas testified on direct examination:

Q.   I might not have heard correctly.
     Did you just say that the situation had become untenable?

A.   Yes.

Q.   And why had it become untenable?

A.   Because we were losing money on every shipment we were sending [to Plaintiff ADA].

Q.   Would it be fair to say that you were losing money because of inflation?

A.   We were losing money because of the -- our cost of manufacture had increased.

Q.   And is that just subject to market forces, for instance, inflation changes, the market changes, so, you know, the current economic circumstances of the deal were temporary, potentially?

A.   Well, at the time that we negotiated the agreement, the rate of inflation in the United States had been varying between -- by less than .1 percent over the past decade, and we negotiated a very low-margin agreement because we were very excited to work with ADA and really wanted this opportunity to work out between us.

WYD 35

And so we had really pushed ourselves to be very aggressive on pricing. That certainly came back to bite us when inflation increased, you know, up to 10-plus percent, a rate -- a rate of change at 10-plus percent. Actual inflation had increased, you know, again, as you know, 26 percent.

…

Q.    Isn't it also true that some of that risk factor is built into a fixed pricing structure like the parties agreed to with Schedule B?

A.    Um, yes. But then you have sets of circumstances -- yes, I would. But, as I indicated, for the previous ten years you predict for it; you forecast for it; you use statistics to define what the risk is and incorporate that into your plan.
        And for the previous ten years, the risk model had been plus or minus .1 percent. It was beyond our ability to anticipate the situation that we found ourselves in.

(Trial Tr. Vol. I 138:10-140:2.)  Plaintiff ADA did not cast doubt on this testimony and did not demonstrate how the combination of the pandemic, war, and acts of civil authorities should have made the negative economic impacts visited upon Defendant Atlas (and upon Plaintiff ADA and most U.S. markets) reasonably foreseeable.

Plaintiff ADA has not established by a preponderance of the evidence that Defendant Atlas' suspension of performance under the force majeure provision breached the parties' contract.  This force majeure provision included an unusual allowance for events causing economic or financial impracticality, and the trial evidence establishes the existence of such. Based upon the evidence presented, the Court finds Defendant Atlas established its performance under the contract was excused by a qualifying force majeure event.  The parties' contract permitted Defendant Atlas to declare a force majeure suspension at the time and in the manner it did.

Defendant Atlas' invocation of the force majeure provision also does not constitute a breach of the implied covenant of good faith and fair dealing.  Defendant Atlas' actions in this

WYD 36

regard "were in conformity with the clear language of the contract," *M & M Auto Outlet v. Hill Inv. Corp.*, 230 P.3d 1099, 1109 (Wyo. 2010), and are insufficient to support a claim for breach of the covenant. There was no evidence presented to suggest Defendant Atlas was employing the force majeure suspension for a nefarious reason or was dishonest about the bases underlying the force majeure notice. Plaintiff ADA is a sophisticated business entity that was free to reject a force majeure provision in the contract that allowed for performance suspension based on economic or financial impracticality, and the circumstances surrounding Defendant Atlas' invocation of that provision do not suggest any unreasonableness or bad faith. *See White v. Shane Edeburn Const., LLC,* 285 P.3d 949, 956 (Wyo. 2012) ("The Edeburns' attempt to terminate the lease simply constitutes an exercise of contractual rights, insufficient to raise a claim of breach of the covenant of good faith and fair dealing.").

For the period of time when Defendant Atlas' contractual performance was suspended under the force majeure provision, the Court finds no breach of contract and no breach of the implied covenant of good faith and fair dealing.

### 1.2 Defendant Atlas' actions after withdrawing the force majeure suspension breached the contract and demonstrated bad faith.

The conclusion is different after Defendant Atlas withdrew its force majeure suspension. After it agreed to resume performance under the contract (largely in response to Plaintiff ADA's motion for preliminary injunction), it didn't so perform. It jerked Plaintiff ADA around until Plaintiff ADA finally, and understandably, walked away. Defendant Atlas' post-force majeure conduct breached the parties' contract and violated the implied duty of good faith and fair dealing.

WYD 37

In the first half of August 2022, Defendant Atlas "communicated to ADA its willingness to continue delivering product to ADA pursuant to the Agreement's Trial Period terms during the pendency of this litigation." (ECF 15 p. 3; *see also* Decl. of Reza Hashampour, ECF 15-1 ¶ 12 ("Atlas evaluated the Agreement and other business considerations and has elected to perform pursuant to the Agreement's Trial Period terms.").) Accordingly, Plaintiff ADA, through its Operations Manager, submitted a written order to Defendant Atlas' VP of Sales on September 1, 2022, which requested to pick up activated carbon on September 16 and September 19. (Ex. 40 p. 1.) The contract required "a minimum Fourteen (14) days prior written notice from ADA." (Ex. 2 p. 2; *see also id.* p. 5 (allowing for notice via email).) The Court finds this contract language to be clear and unambiguous, and Plaintiff ADA complied with its ordering requirements under the contract. The contract also provided, "Atlas shall accept Orders within one (1) business day." (Ex. 2 p. 2.) Defendant Atlas' response to this order used the word "accept," but also directly contradicted any "acceptance" by making clear that it would not fulfill Plaintiff ADA's order:

> Thank you for your order. Atlas cannot accept your order as written. Atlas will ship you activated carbon but the earliest it can do so is in November. Prior order commitments have accounted for existing and planned inventory until then. As such, Atlas also cannot commit to the requested amount of product in your order letter at this time. When Atlas has available inventory in November, I will be able to tell you how much product we can ship at that time. But to be clear, Atlas accepts an order from ADA with details to be arranged later.

(Ex. 42 pp. 2-3.)

This alleged "acceptance" was a sham, and Defendant Atlas' failure to actually accept the order and "arrange for delivery" of the order breached Section 3 of the contract. (*See* Ex. 2 p. 2.) It also breached the force majeure provision which required the party excused from

WYD 38

performance by force majeure circumstances to "proceed to perform with reasonable dispatch whenever such causes are removed or ceased." (*See id.* p. 5.) It further constituted a default under the agreement. (*See id.* p. 4 (identifying "[t]he failure to make available or deliver or accept for delivery the PRODCUCTS [sic] in the time, manner and quantities provided for in this Agreement" as a material default).) And finally, it breached the implied duty of good faith and fair dealing by claiming the order was accepted while refusing to fill it. This interfered with Plaintiff ADA's right to receive the benefit of the contract, inexcusably interfered with Plaintiff ADA's ability to perform its obligation to buy activated carbon under the contract, and contradicted the prior course of dealings between the parties where Plaintiff ADA had placed orders in the same manner, generally for two trailer loads per week as done here, that had been accepted and filled by Defendant Atlas. (*See* Trial Tr. Vol. II 319:9-320:6 (two loads per week), 320:18-321:10 (placing and accepting orders via email).)

Defendant Atlas repeated this sham acceptance on two additional orders placed by Plaintiff ADA—one on September 20, 2022 (Ex. 42 p. 2 (order); Ex. 42 p. 1 ("acceptance" with refusal to fill anytime near the requested dates)) and the second on November 3, 2022 (Ex. 48 p. 3) (order); *id.* ("acceptance" with refusal to fill anytime near the requested dates)). These likewise constituted breaches of the parties' contract as well as the implied covenant. The evidence shows Defendant Atlas' withdrawal of the force majeure notice and assertion that it would perform according to the contract's Trial Period terms was disingenuous and was only a contrivance used to avoid litigating the preliminary injunction request.

### 1.3 The most appropriate remedy for Defendant Atlas' breaches is an award of damages and not forced specific performance.

Plaintiff ADA seeks recovery of its monetary losses and damages incurred as a result

of Defendant Atlas' conduct or, in the alternative, an order directing Defendant Atlas to resume performance in conformity with the contract. (Am. Compl. ¶¶ 122, 127, 128-147.)

Under Wyoming law, specific performance is an equitable remedy that rests within a court's sound discretion. *Morningstar v. Robison*, 527 P.3d 241, 246 (Wyo. 2023). The Court may order specific performance "where there is a valid, binding contract and the facts and special equities of the situation demand such relief." *Davis v. Harmony Development, LLC*, 460 P.3d 230, 240 (Wyo. 2020) (quoting *Dewey v. Wentland*, 38 P.3d 402, 416 (Wyo. 2002)).

There is no question there exists a valid, binding contract here. However, the Court does not find the facts and special equities of this case warrant the equitable remedy of specific performance for two reasons. First, monetary damages for the breaches are an adequate and practical remedy under the circumstances of this case. *See Davis*, 460 P.3d at 240. This is not a dispute involving a unique subject matter, such as the sale of real property. Second, and more significantly, the facts of this case suggest that ordering the parties to resume performance would only result in them being back in the courtroom for additional litigation within a few months. The Court exercises its discretion in determining this is a situation where the parties should be given a clean break from each other rather than forcing them to resume an already-failed business relationship.

The next step, then, is to calculate an appropriate amount of monetary damages owed by Defendant Atlas to Plaintiff ADA for these breaches. An award of damages for a breach of contract is intended to put the non-breaching party in the same position as if the contract had been performed. *Berthel Land & Livestock v. Rockies Exp. Pipeline LLC*, 275 P.3d 423, 433 (Wyo. 2012). It is the non-breaching party's burden to prove contract damages with a

WYD 40

reasonable degree of certainty, and the Court cannot rely on speculation or conjecture when calculating the proper award. *Id.*

In examining the evidence and damages issue, the Court first determines the end-date of the parties' contractual relationship. On this subject, the Court agrees with Defendant Atlas that Plaintiff ADA effectively terminated the parties' contractual relationship as of November 10, 2022, through its conduct when it stopped communicating with Defendant Atlas and did not "confirm" that it would "order" the trailer loads offered for December 15, 2022, and January 12, 2022. (Ex. 48 p. 1; *see also* Ex. 2 p. 6 (contract Section 21 giving Plaintiff ADA exclusive early termination rights if it determined Defendant Atlas could not meet quality or quantity requirements).) Accordingly, the timeframe for damages for Defendant Atlas' breaches runs from September 16, 2022 (what would have been the delivery date for the first post-force majeure order placed by Plaintiff ADA) to November 17, 2022 (what would have been the delivery date for the last post-force majeure order by Plaintiff ADA), a period of slightly more than nine weeks.

For 2022, Plaintiff ADA's budget and business plan included obtaining activated carbon from Defendant Atlas at the contracted prices. (Trial Tr. Vol. II 327:3-12, 341:16-343:17.) In other words, Plaintiff ADA relied on the contract the parties signed in October 2021 when planning for 2022. When Defendant Atlas stopped supplying Plaintiff ADA under the contract, Plaintiff ADA was forced to obtain cover product from other suppliers at an increased price. (*Id.* 328:18-329:18, 341:16-342:20; Ex. 57.) The correct measure of damages is the difference between the contract price and the increased price Plaintiff ADA ended up having to pay to third parties for activated carbon. *See* Wyo. Stat. § 34.1-2-712(b) (Wyoming's

Uniform Commercial Code, which applies to contracts for the sales of goods, providing, "The buyer may recover from the seller as damages the difference between the cost of cover and the contract price").[3]

The Court encounters two hurdles in calculating these general damages for Plaintiff ADA. First, while Plaintiff ADA has identified that it purchased additional activated carbon from its other suppliers to cover that not supplied by Defendant Atlas, it has not clearly identified which loads they were as distinguished from Plaintiff ADA's normal orders. (Trial Tr. Vol. II 352:10-25.) Second, as noted earlier, Defendant Atlas' activated carbon did not meet the contract specifications required by Plaintiff ADA, so Plaintiff ADA had to blend it with other activated carbon until the mixture met specifications. According to Plaintiff ADA's counsel, some of the cover product had to be blended too (that from HOK), but some was of a higher quality and did not need blended (that from Ingevity).[4] (Trial Tr. Vol. III 476:20-23.) Thus, the activated carbon obtained as cover product was not a true 1:1 replacement for Defendant Atlas' missing product. Despite these hurdles, though, the Court concludes Plaintiff ADA has provided enough evidence to prove the damages with a reasonable degree of certainty for the breaches identified herein, calculated as follows.

In 2022, under the Trial Period of the contract, Plaintiff ADA paid $0.45 per pound

---

[3] This subsection of Wyoming's UCC also allows for recovery of any damages incidental or consequential to obtaining cover product, but the parties' contract expressly disclaims each party's liability to the other for any incidental, special, or consequential damages of any nature. (Ex. 2 p. 3.)

[4] At trial, Plaintiff ADA clarified it was not seeking any damages based on the need for it to blend Defendant Atlas' activated carbon with other carbon to bring it within specification. (Trial Tr. Vol. III 474:16-23.) Relatedly, to the extent, if any, that Plaintiff ADA claimed Defendant Atlas breached the contract for failing to meet the product specifications, the Court concludes there was no breach based on Plaintiff ADA's acceptance of the product without reservation. And even if there was a breach, Plaintiff ADA has not established any damages for the off-spec activated carbon with any reasonable degree of certainty.

for activated carbon from Defendant Atlas, $0.55 per pound for HOK's activated carbon (which also had to be blended), and $0.85 per pound for Ingevity's activated carbon (which was of a higher quality and did not need blended). (Ex. 57 p. 1.) And the Court already determined the period of Defendant Atlas' breaches for which Plaintiff ADA is entitled to damages is September 16, 2022, to November 17, 2022. Averaging two trailer loads per week under the contract earlier in 2022, Plaintiff ADA had to cover a total of 19 missing trailer loads of product due to Defendant Atlas' breaches.[5] At about 40,000 pounds per trailer load (Trial Tr. Vol. I 157:22-24), Plaintiff ADA was forced to obtain approximately 760,000 pounds of cover product due to Defendant Atlas' breaches.

The Court would attribute the cover product on a pro rata basis between HOK and Ingevity, but the products are too dissimilar in price and quality to equate. Instead, the Court considers the activated carbon from HOK to be the functional equivalent of that from Defendant Atlas because both had to be blended. (Trial Tr. Vol. III 476:20-23.) And Plaintiff ADA paid $0.10 more per pound for HOK's activated carbon than under the contract with Defendant Atlas ($0.55 per pound vs. $0.45 per pound). Accordingly, the Court considers the additional $0.35 per pound that Plaintiff ADA paid for Ingevity's product (beyond that paid for HOK's product) to be a premium paid for an on-spec product, for which Defendant Atlas is not liable. In other words, the Court concludes it cost Plaintiff ADA $0.55 per pound to replace the missing Defendant Atlas product with a functional equivalent. Thus, at an additional $0.10 per pound for a functionally equivalent product, Plaintiff ADA had to pay an

---

[5] One trailer load on 9/16 as ordered, one load on 9/19 as ordered, a second load the week of 9/19, two loads the week of 9/26, two loads the week of 10/3 as ordered, two loads the week of 10/10, two loads the week of 10/17, two loads the week of 10/24, two loads the week of 10/31, two loads the week of 11/7, and two loads the week of 11/14 as ordered add up to a total of 19 trailer loads.

additional $76,000 to obtain 760,000 pounds of cover product, which constitutes Plaintiff

ADA's monetary damages from Defendant Atlas' breaches.

## 2. Defendant Atlas' Counterclaims for Declaratory Judgment and Breach of the Implied Covenant of Good Faith and Fair Dealing

Before turning to the merits of Defendant Atlas' counterclaims, the Court notes that

Defendant Atlas potentially abandoned its counterclaims by failing to reassert them in

response to Plaintiff ADA's amended complaint. (*Compare* ECF 17 (answer to original

complaint setting forth counterclaims) *with* ECF 36 (answer to amended complaint containing

no counterclaims).) Some courts have held that failure to reassert a counterclaim in an answer

to an amended complaint constitutes abandonment of that counterclaim because the answer

to an amended complaint replaces the prior answer and becomes the operative answer. *See,*

*e.g., Essex Ins. Co. v. Sheppard & Sons Constr., Inc.*, No. CIV-12-1022-D, 2015 WL 11752917, at

*10 (W.D. Okla. July 9, 2015) (collecting cases and concluding that an answer to a second

amended complaint, which did not include any counterclaims, superseded the answer to first

amended complaint that included counterclaims). Other courts have held the opposite,

though. *See, e.g., Hampton v. Barclays Bank Delaware*, 478 F. Supp. 3d 1113, 1140 (D. Kan. 2020)

(collecting cases and stating "in any event, a party does not waive or abandon a counterclaim

by not reasserting it in an amended answer"). The Court need not wade into this issue as both

parties addressed the merits of the counterclaims at trial, and the Court now examines them

here.

### 2.1 Defendant Atlas' counterclaim for declaratory judgment is denied as duplicative and moot due to the Court's rulings on Plaintiff ADA's contract claims.

Defendant Atlas requests "a declaration of its rights during the Trial Period of the

Agreement." (ECF 17 p. 23.) More specifically, it seeks "a declaration that the Agreement does not require Atlas to meet a set quantity or delivery thresholds during the Trial Period" and "a declaration that its discontinuation of delivery in July 2022 does not breach the Agreement." (*Id.*)

The Court has construed the parties' contract to the extent necessary to resolve Plaintiff ADA's causes of action. A declaration that the contract does not require certain quantity or delivery thresholds during the Trial Period is moot at this time because the Court has determined Plaintiff ADA's conduct terminated the contract. Moreover, the parties' contractual relationship has ended, and neither the contract nor its Trial Period demand anything further from the parties.

Additionally, a declaration that Defendant Atlas was permitted by the contract to discontinue delivery in July 2022 would be duplicative, and the request for such is now moot, because the Court determined above that Defendant Atlas' force majeure suspension complied with the contract. Doing so has necessarily determined the parties' relevant rights and obligations under the contract. It would serve no useful purpose to issue Defendant Atlas' requested declaratory judgment at this point.

Accordingly, Defendant Atlas' counterclaim for declaratory judgment is denied.

## 2.2 Defendant Atlas did not prove its counterclaim of breach of the implied covenant of good faith and fair dealing.

Defendant Atlas also alleges Plaintiff ADA breached the implied duty of good faith and fair dealing by attempting to condemn the parties to a perpetual Trial Period under the contract. (ECF 17 p. 24.) More specifically, Defendant Atlas asserts Plaintiff ADA "has known since the inception of the Agreement that performance by Atlas was impossible

because Atlas' feedstock disallows production of the requisite quality of Product." (*Id.*) Essentially, Defendant Atlas claims Plaintiff ADA knew Defendant Atlas could never meet the product specifications in the contract and therefore attempted to keep Defendant Atlas trapped within the Trial Period of the contract based on its failure to supply fully-conforming product. This counterclaim fails for three reasons:

(1)     Dr. Joseph Wong, Plaintiff ADA's Chief Technical Officer, testified that in Plaintiff ADA's own testing of the Powder River Basin coal feedstock used by Defendant Atlas as well as Defendant Atlas' activated carbon, Plaintiff ADA was able to meet the specifications of the contract, including the volatiles requirement.[6] (Trial Tr. Vol. I 71:2-72:4, 73:16-77:4.) Thus, there is no basis for Defendant Atlas' allegation that Plaintiff ADA "knew" it was impossible for the Powder River Basin coal feedstock to meet the contract specifications. Instead, the opposite is true: Plaintiff ADA knew Power River Basin coal feedstock could be used to meet the product specifications.

(2)     Reza Hashampour, Defendant Atlas' CEO, testified that Defendant Atlas "sure tried" to meet the product specifications set forth in the parties' contract. (Trial Tr. Vol. II 195:12-15.) Thus, even Defendant Atlas did not believe it was "impossible" to meet the product specifications when the contract was signed.

(3)     As with Plaintiff ADA and the force majeure provision allowing for performance suspension based on economic or financial impracticality, Defendant Atlas did not have to enter into a contract where it expressly warranted, without excluding the Trial

---

[6] Defendant Atlas' proprietary activation system and physical configuration had inherent limitations concerning how much heat it could apply to the coal and for how long. Thus, it seems likely that Dr. Wong's testing applied higher heat and/or applied heat for a longer period of time to successfully reduce the volatiles to within the 8% contract requirement.

WYD 46

Period, its activated carbon would "conform to those specifications contained in Schedule A." (Ex. 2 p. 3.) Nor did Defendant Atlas have to agree that the Trial Period would continue until Plaintiff ADA had received 2.56 million pounds "of conforming Products." (*Id.* pp. 1-2.) Plaintiff ADA's attempts to enforce these agreed-upon contract provisions do not constitute bad faith. *See Harper v. Fidelity and Guar. Life Ins. Co.*, 234 P.3d 1211, 1221 (Wyo. 2010) (no claim for breach of implied covenant of good faith and fair dealing exists where party is simply exercising the rights they are contractually entitled to under the contract).

Both parties ended up dissatisfied with certain provisions of their contract. The right to contract includes the right to contract unwisely. *See P&N Investments, LLC v. Frontier Mall Assocs., LP*, 395 P.3d 1101, 1107 (Wyo. 2017) ("courts are not at liberty to rescue parties from the consequences of their unwisely made bargains"). And one party's expectation that the other party will meet its contractual requirements does not constitute a breach of the implied covenant of good faith and fair dealing, nor does reasonably attempting to enforce contract obligations. *See Skyco Resources*, 512 P.3d at 25 ("the exercise of contractual rights alone will not be considered a breach of the covenant"). Accordingly, Defendant Atlas' counterclaim for breach of the implied covenant of good faith and fair dealing is denied.

## 3.     The Parties' Requests for Attorney Fees

Both parties ask for an award of attorney fees. (ECF 35 p. 34; ECF 17 p. 25; ECF 36 p. 27.)

> Wyoming follows the American rule, which provides that each party is responsible for his or her own attorney fees. *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 29, 360 P.3d 1006, 1016 (Wyo. 2015). There are narrow exceptions, however. Attorney fees can be recovered where a contractual or statutory provision authorizes them, or as a form of punitive damages when such damages can properly be awarded. *Id.*

*Pennaco Energy, Inc. v. Sorenson*, 371 P.3d 120, 131 (Wyo. 2016).

Here, the parties have not identified any contractual or statutory provision that would allow for the recovery of attorney fees. Further, not only does the Court not find any basis for an award of punitive damages, but the parties' contract forecloses the recovery of punitive damages "under any theory of liability." (Ex. 2 p. 6.) And to the extent Defendant Atlas asserts the damages associated with its counterclaims are its attorney fees (ECF 88 p. 20), the Court determined above that those counterclaims fail. Both parties shall pay their own attorney fees.

## 4.   Defendant Atlas' Rule 52(c) Motion for Judgment on Partial Findings

At the end of Plaintiff ADA's case-in-chief, Defendant Atlas moved under Fed. R. Civ. P. 52(c) for judgment on partial findings against Plaintiff ADA's claims, and counsel presented argument on that motion. (Trial Tr. Vol. III 447:3-489:21.) The Court took the motion under advisement and reserved ruling on it. (*Id.* 489:22-490:11.) Having now examined the merits of the parties' claims in detail herein, the Court concluded Plaintiff ADA partially proved its claims of breach of contract and breach of the implied covenant of good faith and fair dealing. Accordingly, Defendant Atlas' Rule 52(c) motion for judgment on partial findings is denied.

## 5.   Prejudgment Interest and Post-Judgment Interest

Plaintiff ADA seeks both pre- and post-judgment interest. (Am. Compl. p. 34.) Prejudgment interest in a diversity action such as this is considered part of the compensation award and "is thus a substantive matter governed by state law." *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002). "Prejudgment interest is available if a two-part test is met: (1) the claim must be liquidated, as opposed to unliquidated, meaning it is readily

WYD 48

computable via simple mathematics; and (2) the debtor must receive notice of the amount due before interest begins to accumulate." *KM Upstream, LLC v. Elkhorn Constr., Inc.*, 278 P.3d 711, 727 (Wyo. 2012). Here, the parties' contract does not address prejudgment interest, and the Court concludes there is insufficient evidence to suggest Plaintiff ADA ever gave Defendant Atlas notice of a liquidated damages amount sufficient to trigger an award of prejudgment interest. Thus, the award of monetary damages in Plaintiff ADA's favor is not subject to prejudgment interest.

"Federal law governs the calculation of post-judgment interest in federal court, which is considered a procedural matter, even on state-law claims." *Pedroza v. Lomas Auto Mall, Inc.*, 663 F. Supp. 2d 1123, 1130 (D.N.M. 2009) (citing *Transpower Constructors v. Grand River Dam Authority*, 905 F.2d 1413, 1423–24 (10th Cir. 1990)). Post-judgment interest is "allowed on any money judgment in a civil case recovered in district court," and the statutory rate is tied to United States Treasury bond rates. 28 U.S.C. § 1961. Plaintiff ADA's money judgment is subject to post-judgment interest at the statutory rate, and such will be reflected in the judgment.

## CONCLUSION AND ORDER

Defendant Atlas did not breach the parties' contract or the implied covenant of good faith and fair dealing by declaring a force majeure suspension of performance in July 2022. However, it did breach the contract and the implied covenant after it withdrew the force majeure suspension and agreed to perform under the contract in August 2022, but then failed and refused to fill Plaintiff ADA's orders in conformity with the contract and the parties' course of dealing. Plaintiff ADA is entitled to an award of $76,000.00 to offset the increased

WYD 49

cost of having to obtain cover product from when Defendant Atlas withdrew its force majeure suspension until Plaintiff ADA terminated the contract through its conduct of discontinuing communications with Defendant Atlas. The Court declines to order specific performance. Plaintiff ADA's monetary damages award is subject to post-judgment interest but not prejudgment interest.

Defendant Atlas' counterclaims for declaratory judgment and breach of the implied covenant of good faith and fair dealing are denied.

Neither party has established its entitlement to attorney fees, and therefore each party shall pay its own attorney fees. Finally, Defendant Atlas' mid-trial Rule 52(c) motion for judgment on partial findings is denied.

**IT IS THEREFORE ORDERED** that the Court grants judgment in Plaintiff ADA's favor and against Defendant Atlas in the total amount of **$76,000.00**, plus post-judgment interest, for Defendant Atlas' breach of the parties' contract and breach of the implied covenant of good faith and fair dealing. Taxation of costs is permitted to the extent allowed by Fed. R. Civ. P. 54(d)(1) and Local Civil Rule 54.2. Plaintiff ADA's alternative request for specific performance is denied.

**IT IS FURTHER ORDERED** that the Court grants judgment in Plaintiff ADA's favor and against Defendant Atlas on Defendant Atlas' counterclaims for declaratory judgment and breach of the implied covenant of good faith and fair dealing.

**IT IS FURTHER ORDERED** that each party's request for an award of attorney fees is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Atlas' Rule 52(c) motion for

WYD 50

judgment on partial findings is **DENIED**.

      **IT IS FINALLY ORDERED** that the Clerk of Court will please enter a Judgment under Fed. R. Civ. P. 58 reflecting these findings of fact and conclusions of law, and then close this case.

      **ORDERED**: January __18__, 2024.

                           Scott W. Skavdahl
                           United States District Judge

WYD 51

# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2024 JAN 18 AM 10: 44

MARGARET BOTKINS, CLERK
CASPER

ADA CARBON SOLUTIONS (RED
RIVER), LLC, a Delaware Limited Liability
Company,

        Plaintiff,

v.

ATLAS CARBON, LLC, a Wyoming
Limited Liability Company,

        Defendant.

Case No. 22-CV-161-SWS

---

## JUDGMENT

This matter came before the Court for a bench trial on Plaintiff's contract claims and Defendant's counterclaims. After considering the testimony and evidence presented, the Court issued a Bench Trial Memorandum Decision and Order (ECF 102), which is fully incorporated herein by this reference. In conformity with that Memorandum Decision and Order,

**JUDGMENT is hereby entered** in favor of Plaintiff ADA Carbon Solutions (Red River), LLC and against Defendant Atlas Carbon, LLC on Plaintiff ADA's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing in the final amount of **$76,000.00**, with post-judgment interest at the rate of 4.77% per annum under 28 U.S.C. § 1961 beginning on the date of judgment until the debt is paid in full. Taxation of costs is permitted to the extent allowed by Fed. R. Civ. P. 54(d)(1) and Local Civil Rule 54.2.

WYD 52

**JUDGMENT is hereby entered** in favor of Plaintiff ADA Carbon Solutions (Red River), LLC and against Defendant Atlas Carbon, LLC on Defendant Atlas' counterclaims for declaratory judgment and breach of the implied covenant of good faith and fair dealing.

**DATED:** January _18th_, 2024.

Entered:  Margaret Botkins
Clerk of Court

By: _Elayna Thorsell_

Elayna Thorsell
Deputy Clerk of Court

WYD 53

Maxwell N. Shaffer, Wyo. #7-5189
Thomas D. Leland, *pro hac vice*
8694 E. 28th Ave.
Denver, Colorado 80238
Phone: 720.556.1872
Email: maxwell.shaffer@lelandshaffer.com
      thomas.leland@lelandshaffer.com

*Attorneys for ADA Carbon Solutions*
*(Red River), LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ADA CARBON SOLUTIONS (RED RIVER), LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>    v.<br><br>ATLAS CARBON, LLC, a Wyoming Limited Liability Company,<br><br>    Defendant-Counterclaim Plaintiff. | Case No. 1:22-cv-00161-SWS |

## NOTICE OF APPEAL

ADA Carbon Solutions (Red River), LLC, under Fed. R. App. P. 3(a) and 4(a)(1)(A), hereby appeals the Court's January 18, 2024 Bench Trial Memorandum Decision and Order (Doc. 102) and January 18, 2024 Judgment (Doc. 103) to the United States Court of Appeals for the Tenth Circuit.

Dated this 20th day of February, 2024.          Respectfully submitted,

                                                LELAND SHAFFER LLP

                                                By: _/s/ Maxwell N. Shaffer_____
                                                Maxwell N. Shaffer, Wyo. #7-5189
                                                Thomas D. Leland, *pro hac vice*
                                                8694 E. 28th Ave.
                                                Denver, Colorado 80238
                                                Phone: 720.556.1872
                                                Email: maxwell.shaffer@lelandshaffer.com
                                                       thomas.leland@lelandshaffer.com

                                                *Attorneys for ADA Carbon Solutions*
                                                *(Red River), LLC*